## HELFI CO. v. SILVEX CO. et al.

(District Court, E. D. Pennsylvania. July 25, 1921.)

No. 1851.

1. **Trade-marks and trade-names and unfair competition ⟜70(1)—Competitive sale of similar article, free from deceit, is not unfair competition.**
  The copying by defendant of an article made by complainant, not protected by patent, and its sale in competition, does not constitute unfair competition, unless accompanied by acts tending to create confusion as to origin of defendant's article, or to induce purchasers to believe that it is complainant's product.

2. **Patents ⟜328—1,061,915, for a spark plug, held void for lack of invention.**
  The Charles F. Johnston patent, No. 1,061,915, for a spark plug, *held* void for lack of invention.

In Equity. Suit by the Helfi Company against the Silvex Company and the Bethlehem Spark Plug Company. Decree for defendants.

Chester N. Farr, Jr., and William A. Glasgow, Jr., both of Philadelphia, Pa., and Wallace R. Lane and George Mankle, both of Chicago, Ill., for plaintiff.

Dallett H. Wilson and Edward H. Schwab, both of Bethlehem, Pa., and J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. Before the incorporation into the equity rules of the principle embodied in rule 26 (198 Fed. xxv, 115 C. C. A. xxv) this bill of complaint would have been open to the charge of

multifariousness. It combines in one complaint two wholly different and independent causes of action. One is based upon an averment of a trespass upon the patent rights of the plaintiff; the other upon an averment of unfair competition. More than this, of one this court has jurisdiction and may entertain, and of the other by itself we can entertain jurisdiction only because of the consent presumed because of the waiver of the defendants' rights implied by the failure to raise the question of jurisdiction. Having jurisdiction of the cause and of the parties in respect to one cause of action, this court, on the principle of doing full and complete justice, may of course proceed to determine all the questions raised. It is well, however, for the purpose of clarity, to keep the discussion of each clear of all admixture of the other. We would have been much helped in this effort if the parties had kept the two complaints clear of each other. This has not always been done, either in the development of the facts or the discussion of the merits of the cause. More than this, most of the testimony was by way of depositions, and the record has been swelled by discursive statements, none of which are in any sense evidential and have only the purpose of disparagement.

[1] *Unfair Competition.*—This complaint will be first heard. To get the facts upon which this complaint is based, we have been forced to go over, with painful attention, the whole of the evidence and all the testimony of all the witnesses other than the patent expert testimony. The gravamen of the charge consists in averments to the following effect:

The plaintiff had on sale a spark plug, to the exclusive sale of which they not only had a proprietary right under the patent laws, but a make of plug which had become known to users by the distinctive name of the "Helfi" plug. This name, and the exclusive right to the use of it, had been secured to the plaintiff by its registration as a trade-mark. A reputation had been built up for plaintiffs' make of plug under this name by an extended and expensive campaign of advertising, conducted along their own lines, and with the aid of pictorial illustrations of artistic merit and original design. The services of the defendants had been enlisted in the marketing of this make of plug, by becoming the sellers of it, through which connection the defendants had learned of the plaintiff's plan of advertising campaign in all its methods and details and became possessed of a list of plaintiffs' customers.

The charge is made that the defendants broke with the plaintiff, ended all relations, and set up as rival contestants for plaintiff's trade, and in order to share in it copied not only plaintiff's make of plug, but followed the same advertising methods, used the same illustrations in the unfair, but successful, attempt to create the impression among buyers and users of spark plugs that what the defendants were selling was the spark plug of the plaintiff for which they had built up a reputation. We are unable to make the fact findings upon which a charge of unfair competition could be based. The sincerity of plaintiff's emphatic assertions of belief in the charge is due to a misconception of what unfair competition is, and the failure to get the right view of defendants' conduct and motives.

The plaintiff claims to have been the first to put these plugs upon the market. We have frequently before had occasion to observe that whenever any one has a special make of anything, for which he has created a market, or whenever he is the first to discover or occupy a new commercial field, there is a proneness to set up an exclusive proprietorship in such specialty and to the field thus occupied. As has before been remarked, this feeling of exclusive ownership is so general and sincere as that there must be some basis for it in the common sense of right and justice. Indeed, it is this common feeling which prompts the grant of the legal rights awarded by our patent, trade-mark and copyright laws.

Beyond the reach and scope of these laws, however, the legal right does not exist, because there is otherwise no recognition by the law of any exclusive right. The refusal to give such recognition is built upon a policy of the law adopted in deference to the need which the public has of protection against the evils of monopoly. The need, as well as wisdom, of such a policy, is attested by the fact that the accusation most insistently made and indignantly repelled is that of lowering the price charged for these spark plugs. The fact is worthy of comment that each of these litigants deems this to be the most damaging accusation which can be hurled against the other.

The doctrine of the law of unfair competition is wholly different from the law of patent rights and has another basis. This is built upon the right of every man to the enjoyment of the benefits of the business as well as the personal reputation he has made for himself. No rival is permitted to deprive him of this personal reputation by destroying it by the arts of detraction or slander, or to divert the benefits of this business reputation by creating the deception that what the one is selling is what the other has made. The test of the representations made is not in the thought that one product is like the other, or indeed identical in kind and quality with the other, but in the thought of origin. What the defendants did may or may not have been an ungracious thing; it may have been what, in the common phrase, is called "not the decent thing"; but it was not unlawful, nor was it unfair in the legal sense.

The real indictment of the defendants is found, not in the fact that they imposed their make of plug as the plug made by the plaintiff, but because they set themselves up as rivals, striving to supplant plaintiff's make of plug with a make of their own. It is true the plug in kind and accomplishments was the same plug, but the make was that of defendants, and not plaintiff. Indeed, defendants would have defeated their own purpose if they had represented, or even permitted purchasers to think, the plugs made by them to be plaintiff's make of plug.

The prompting, purpose, and accomplished result of what defendants are charged with having done was this:

A plug was being made and sold by the plaintiff; it was a good plug; the defendants thought, however, the price was high, and that there was more money to be made through a lowered price; the plaintiff stood out for the higher price. Such was the situation. It was met by the defendants with the thought that, if the plaintiff had an exclusive proprietary right to market a plug of this kind, they of course could control its sale;

otherwise, any one was legally free to put it upon the market. The defendants were of opinion that the right to sell was not exclusive, and took the risk involved in acting upon the soundness of this opinion.

The position of the plaintiff is that the defendants sold a Chinese copy, as it is commonly called, of the plaintiff's plug. If the novel features of this plug are functional, the defendants have infringed plaintiff's patent; if they are not functional, and because of this not patentable as a mere special make of plug, then the defendants have been guilty of unfair competition. The support of each horn of this dilemma is a legal right. If the claims of the patent are valid claims, the first has support; but there is no support for the other in a claim to an exclusive right in a mere special make of spark plug lacking in patentable features. The support, if there is any, is in the finding of an imposition of one make upon purchasers for the other. This is the finding which we refuse to make. Indeed, it is not possible to go over this record without being impressed with the thought that the gravamen of the complaint is not so much the competitive sale by defendants of plaintiff's spark plugs as it is of the handicap imposed upon plaintiff in the competition for trade.

The plaintiffs were hampered by the lack of adequate capital and of business prestige. They could build up their reputation only by building up their trade, and the want of the one was felt to hinder the other. They saw, with feelings of apprehension, a competitor enter the field supplied with unlimited resources, backed by a business reputation which sprang out of the glamor surrounding the name of a great steel plant. This was felt to be unfair, not only in the sense in which unfairness is felt when one enters into competition with those who are not in his class, but also because the defendants were thought to be seeking trade through a reputation not their own, and one in which they had no just share. The resources of the defendants in money and organization enabled them to go into new fields which the plaintiffs could not reach, and to go heralded by the reputation of a name synonymous with business success. The plaintiffs felt themselves helpless in the face of such a rivalry. However much we may appreciate and sympathize with them in this feeling, we cannot extend to them the aid of the power of the law. The consequence is that their cause of action rests wholly upon their claim to a patent right.

[2] *The Patent.*—This feature of the case concerns letters patent No. 1,061,915, applied for February 4, 1911 and issued May 13, 1913, for an improvement in spark plugs, intended chiefly for use in automobiles. The defense is invalidity. A main utility merit claimed for this spark plug is that previously to its introduction users of cars were troubled with "the carbonization and sooting of the cylinders." This made necessary the overhauling of the engine, with its attendant annoyance to users, expense, and temporary loss of the service of the car. The advantage of avoiding this is claimed to be due to or to result in the production of a larger spark. Because larger, it is "more diffused" and is hotter, and, being produced where its work is most effective, it thus brings about a more complete combustion as the explosion occurs. Utility is denied to some features of plaintiff's plug. As a practical

question, any criticism of a claimed invention on this ground (if infringement be present) is disposed of by the infringing act. Such a criticism by an infringer is usually worse than idle. By making the criticism good, he goes dangerously near at least the border land of unfair competition. If the device or feature imitated is useless, why was it imitated? The only possible answer is that the purchasing public had been educated into believing the inutile thing to have value. If this market demand, although baseless, had been created by one maker, a second, who seeks to get the benefit of it, is striving to appropriate the fruits of another's labors. He may stop short of the unfair competition which would subject him to an action for damages; but any assertion of the worthlessness of what he has appropriated proclaims the assertion worthless, or at least unsafe to accept.

We will not further trouble ourselves with any inquiry into utility. It holds out no promise of being worth while itself. The real question presented is whether the defendants had a like right with the plaintiff to sell these spark plugs. They had such right, unless the plaintiff's patentee had invented and patented them. The right of the defendants, if any, may be best tested by the results of the inquiry of whether the inventive ideas embodied in these plugs were derived by plaintiff and defendants alike from a common source. The fact, which is a fact in the defendants' conduct boldly admitted, that they appropriated plaintiff's make of plug, does not affect the right, if that make of plug was common property. We may begin the inquiry by learning the resources of the prior art and then comparing these possessions with what the defendants have, or by first learning to what the plaintiff lays claim, and then looking for this in the prior art.

The second method has its advantages, and because of this is commonly employed. The thought of spark plugs was part of the common fund of knowledge. This narrows our inquiry, so that we look, not for spark plugs, but for particular makes. Every invention, when viewed as embraced in a physical structure, includes a function and the means of performing it. The function may be a broad or a particular subordinate one. The riddance of sooting is one of those claimed. The thought of this purpose antedates all the patents. It was at least one of the aims of the present patentee. In addition, or supplementary to this, he strove for a larger spark. These were his main objectives. The ultimate one was of course to assure or at least promote ignition. The prevention or removal of soot deposits would do this. The presence of a large spark would assure ignition whether the cause or effect of the absence of sooting. The patentee, in consequence, places the large spark first and emphasizes it. A subordinate purpose was to facilitate the cleaning process, if found necessary.

Let us keep these objectives in mind as we probe into the prior art: (1) Prevention or removal of soot deposits; (2) the assurance of a spark in order to have combustion, in the absence or presence of soot; and (3) facilities for cleaning. All of these objectives were old. Our inquiry may in consequence be confined to the means proposed. What are they, how far are they novel, and to what extent do they involve invention? Wherever there is patentable invention, there is

274 F.—42

both an idea and an embodiment of it. This patentee has sought to cover every possible form of spark plug construction, but this is for the avowed purpose of protecting essential features from encroachment. These features are the projection of the electrodes beyond the casing or any form of housing, multiple electrodes, their parallelism at their extremities within sparking proximity, and some basket or other form of arrangement productive of a splitting up of the gases. These are the features of the invented device. They are redescribed by an enumeration of their functions. The last-mentioned feature can only thus be described.

It thus becomes apparent that in this device there can be no combination in which real invention is present, unless one or more of the elements combined possesses novelty. The experience of this application in the Patent Office, as disclosed by the file wrapper, makes, it seems to us, the absence of invention clear. The very problem presented by his employers to the patentee emphasizes it. He was not called upon necessarily to invent anything, but merely to get up a special make of spark plug, which the plaintiff might put on the market as their make. The giving to it of a trade-name and protecting the name by a trade-mark and the charge of unfair competition are all admissions of the absence of a patent right. The distinction between a special make of anything which may have the protection of a trade-mark, and an invention to which is given the reward of a patent of monopoly, is basic and important. Which is one and which the other may be determined by subjecting the question to the test of the rights of the claimant to exclusive proprietorship and the rights of any intending competitor.

The right of the one is to go to the prior art (assuming it to be common property) and with its aid to get up a special make of anything. He may have invented nothing, but yet the maker may protect this special make by a trade-mark. This gives him, however, only the exclusive right to his make, not the exclusive right to the thing made, or to make the thing itself. If, however, invention is involved in what he has done, then his right is not merely to his make of what he has made, but is the exclusive right to make, and this right is assured to him by a patent. If the first maker has no patent, but only a trade-mark, any competitor may make what the first maker has made with impunity, as long as he respects the first make and the name by which it is known. In other words, when there is no invention, the test is not whether there is substantial likeness or even identity in the things made, but whether there is confusion of the makers. Where invention is present, substantial equivalency in what is made is the test. As we view it, the claims of the letters patent issued, or indeed any claims which could be formulated, based upon the features of plaintiff's spark plug, would be inclusive of any spark plug which could be devised by any one instructed wholly by the prior art, unless he omitted features admittedly present in that art.

These conclusions result in a finding that the claims of the patent in issue are of no validity, and that the averments of unfair competition are not sustained, and, in consequence, the bill of complaint is dismissed, with costs, for want of equity.