# William T. Hughes, Appellant, v. West Publishing Company, Appellee.

## Gen. No. 27,060.

1. UNFAIR COMPETITION—*requisites and insufficiency of bill not based on infringement of trade-mark or trade name.* A bill charging the appropriation by defendant of complainant's system 'of legal study and certain words descriptive of it, and the use of a key to a Yale lock in illustration of the system, based solely upon the theory of unfair competition and praying for an accounting and injunctive relief, was properly dismissed for want of equity after a general demurrer had been sustained and complainant had elected to stand by his demurrer, where the bill contained no allegations showing any competition whatever between the books written by complainant and the publications of defendant, nor any allegations that defendant had ever represented its productions in such a way as to interfere with any emoluments derived by complainant from the publication of his own works, nor any allegations showing damage.

2. PROPERTY—*ownership and protection of system, plan or scheme.* There is apparently no authority holding that at common law there is a proprietary right in a system, device, plan or scheme.

3. PROPERTY—*injunction to restrain use of system of legal study in absence of breach of trust or contract.* The complainant, in a bill to restrain the use of his system of legal study, had no property right in such plan or system in the absence of fiduciary or contractual relations between him and the defendant, other than that defendant at one time contracted with complainant to advertise such system in its publications, which contract was performed.

4. PROPERTY—*ownership of, words descriptive of symbol.* An exclusive property right did not exist in the words "Key Number System," illustrated by the symbol of a key as descriptive thereof.

5. UNFAIR COMPETITION—*insufficiency of misrepresentation as ground for relief when unaccompanied by competition or damage.* In a bill charging appropriation by defendant of complainant's system of legal study and certain words descriptive of it and the use of a key to a Yale lock in the illustration of the system, where neither competition nor damage by defendant, nor an exclusive property right by complainant was shown in the bill (which was dismissed for want of equity after sustaining a demurrer), the mere fact that defendant imposed upon the public by claiming that its "Key Number System" was a new and original discovery

Hughes v. West Publishing Co., 225 Ill. App. 58.

was immaterial, even if similar numbering devices had been in use from the earliest publications down to the present time.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed April 18, 1922. *Certiorari* denied by Supreme Court (making opinion final).

EDWARD T. LEE and FRANK A. HELMER, for appellant.

JOHN M. ZANE, FRANK F. REED and EDWARD S. ROGERS, for appellee.

MR. JUSTICE MORRILL delivered the opinion of the court.

The circuit court of Cook county sustained a general demurrer to the bill of complaint. Complainant elected to stand by his bill. Thereupon the court entered a final decree dismissing the bill for want of equity, from which the complainant, William T. Hughes, has prosecuted this appeal.

The bill of complaint, after setting forth at some length the scholastic and professional attainments of complainant, as well as his devotion to an effort to classify the body of the English law so as to make its study more scientific than was possible under prior publications, alleged that he devised a key number system, which he claimed unlocked the treasures of the law and that he illustrated the system by using the picture of a key to a Yale lock. For the purpose of illustrating and teaching his system of legal study, complainant wrote and published a series of works upon legal subjects. The titles of these works indicate that they are textbooks relating to fundamental legal principles, practice and procedure. The bill does not disclose the scope or plan of these works or the method of treatment of the various subjects. There are eight

of these works, consisting of twelve volumes. The first was published in 1893 and the last in 1921.

The bill further alleged that complainant caused these works to be advertised in various legal journals using, with reference to them, such descriptive phrases as, "The key to your library," "Hughes' Procedure unlocks any library" and employed in connection therewith the symbol of a key; that among the publications in which he so advertised was the Northwestern Reporter, which was controlled and published by defendant, and that on May 22, 1906, he caused an advertisement to be published of his work on procedure which contained the words, "Hughes' Procedure unlocks any library," printed on the facsimile of a Yale lock key, which it is alleged was the first time this was ever done. Thereafter defendant, which for many years had been the publisher of numerous law books, textbooks, digests and serial reporters, announced a departure in the plan of their publications, stating that defendant would henceforth use permanent and uniform numbers referring to topics and sectional divisions of its works; that it put this new plan into operation by placing upon its volumes a label reading, "This is a key number volume," and also employed the facsimile of a Yale lock key in connection therewith and eventually used upon all of its publications, advertising literature and stationery the expression "Key Number System" and the facsimile of a key, and declared its key number system to be original, exclusive and revolutionary. It also averred that complainant objected on several occasions, without result, to this alleged appropriation of his system and the words descriptive of it and the use of the symbol of a key in advertising defendant's publications and that finally, on October 30, 1920, he commenced this action against defendant.

The foregoing are substantially all of the material allegations of the bill of complaint, which must be

taken as true and which appellant contends are suffi-
cient to require an answer, and upon proof of the
matters therein alleged to justify the court in granting
the relief sought by the bill. The prayer of the bill is
that defendant be required to answer certain inter-
rogatories, which need not be enumerated in detail,
and that an account be taken of all business dealings,
transactions and sales of defendant's various publica-
tions in connection with which defendant used the
phrase "Key Number System" or the symbol of a
key and an account of all moneys received and profits
made in such dealings, transactions and sales, and
that in the meantime defendant be restrained from the
further use of said "Key Number System" and the
further use of the symbol of a key in its publications
and in its advertisements thereof and other literature
and that upon final hearing such injunction be made
permanent. The bill also prayed for general relief.

The brief of counsel for appellant indicates that
appellant's claim is not based upon the violation of
any copyright of his various works or of any trade-
mark or trade name, registered or otherwise, but ap-
pellant contends that his rights are based solely upon
the theory of unfair competition on the part of defend-
ant. The bill of complaint contains no allegations
showing that there is any competition whatever be-
tween the books written by complainant and the pub-
lications of defendant. While it is true that the bill
in a general way alleges that defendant is the publisher
of numerous textbooks and other works upon legal
subjects, it is entirely silent as to the details of these
books and contains no allegation showing their titles,
nature, scope or subject-matter, other than the general
statement that they deal with legal subjects. The
specific allegations of the bill as to the improper use
by defendant of the system of key numbers and the
symbol of a key relate to the use of this system and
symbol in connection with certain digests published by

defendant. The bill does not charge that there is any competition whatever between these digests and the textbooks published by complainant. It seems obvious that in the absence of any charge or other indication of an existing competition, the claim of unfair competition cannot be sustained. Appellant relies particularly upon the case of *International News Service v. Associated Press*, 248 U. S. 215, as being the last word upon the subject of unfair competition, showing particularly the elasticity of the term by its application to mere news, which is not property and cannot be the subject of a copyright. This decision was based upon unfair competition solely. There was no consideration given as to whether there was a violation of any common-law property right in news matter and whether this right was lost or still remained after publication, by reason of the copyright act. The court said, in substance, that, regarding news matter as the mere material out of which these two competing parties are endeavoring to make money, and treating it, therefore, as *quasi* property for the purpose of their business because they are both selling it as such, defendant's conduct differs from the ordinary case of unfair competition in trade, particularly in this, that instead of selling its own goods as those of complainant, it substitutes misappropriation in the place of misrepresentation and sells complainant's goods as its own. It therefore seems obvious that the relief which was granted to complainant in the case cited was based upon the fact that both complainant and defendant were in competition with each other and that the appellant was unlawfully appropriating the news matter which had been obtained and given publicity before its actual publication by the other competing party. No such conditions exist in the case at bar. Not only is there no charge in the bill that the publications of defendant compete with those of complainant, but there is no allegation showing that defendant has ever rep-

resented its productions in such a way as to interfere with any emoluments derived by complainant from the publication of his own works. Defendant has never appropriated any portion of the literary efforts of complainant. Reliance is also placed upon the case of *Fisher v. Star Co.,* 231 N. Y. 414, in which the court stated broadly that, ''No person should be permitted to pass off as his own the thoughts and works of another,'' and restrained the defendant from using in cartoons the imaginary and fictitious characters of ''Mutt and Jeff.'' Upon the trial of the case the evidence had been such as to prove that the defendant had been guilty of deception in leading the public to believe that its business was that of the complainant, who had originated these characters and was the owner of the proprietary right in them. No such circumstances are involved in the case at bar, and we are not at liberty, in the absence of specific charges, to consider the possible scope of the evidence which the ingenuity of counsel might lead them to present in support of the general averments of the bill.

It is also contended by appellant that he has a property right in the use of the key number system in connection with legal study and in the use of the symbol of a key to describe his system, which is the selling feature of his publication, securing for him numerous patrons and customers and that appellant has a natural right to the fruits of his own labor, of which no other person can rightfully deprive him against his own will, citing *The Antelope,* 10 Wheat. (U. S.) 120, and *Bright v. Boyd,* 1 Story (U. S.) 478. We deem it unnecessary to review at any great length the authorities which are cited by appellant in support of this contention. Among them is the case of *National Tel. News Co. v. Western Union Tel. Co.,* 119 Fed. 294, in which the court enjoined the appellant from appropriating the ''ticker'' news of the current prices of securities and grain which appellee had distributed to the

public by means of its tapes and restrained appellant from distributing this news, instantaneously upon its appearance on the tape, to its own patrons, as its own product, thereby escaping the expense of collecting the information. In *Fonotipia Ltd. v. Bradley,* 171 Fed. 951, defendant was enjoined from manufacturing and selling records made from records published by complainant, who made the same at great expense after procuring the services of singers and musicians in their preparation, and the court held that it was within its power to protect by injunction the full enjoyment of corporeal and incorporeal rights and property created by complainant at its expense and which were capable of being appropriated by another. The same principles are involved in *Prest-O-Lite Co. v. Davis,* 209 Fed. 917; *Dodge Co. v. Construction Information Co.,* 183 Mass. 62, and in *Searchlight Gas Co. v. Prest-O-Lite Co.,* 215 Fed. 692, in all of which the unlawful appropriation of various types of intangible property was enjoined. The conclusion to be drawn from these cases is that wherever a property right exists the court will by injunction protect the complainant from unlawful appropriation by others. Appellee does not dispute this proposition.

Appellant seeks to establish a property right in his system, plan or device and to prevent an appropriation thereof by defendant to the damage of complainant, but does not show by appropriate allegations of his bill that complainant has been in any way damaged. There is no charge contained in the bill to the effect that defendant's publications have been substituted or sold in place of complainant's or that the business of complainant in selling his books has been lessened or impaired in any way by defendant's acts. Appellant has not called our attention to any authorities indicating that he is entitled to relief in a case where no damages have been shown or alleged. The element of

damage was a controlling feature in all of the cases above cited upon which appellant relies.

So far as we are advised, there is no authority holding that at common law there is a property right in a system, device, plan or scheme. That no such right exists has been held in a great number of cases, in the absence of any confidential or contractual relations between the parties. In *Haskins v. Ryan,* 71 N. J. Eq. 575, the court held that there was no property in an idea or plan for combining a number of companies engaged in the white lead industry and procuring options for their purchase. The mere idea was not capable of legal ownership and protection. No common-law property right exists in a plan or device relating to the use of certain electrical devices, plugs and receptacles. *Harvey Hubbell, Inc. v. General Elec. Co.,* 262 Fed. 155. The same rule was sustained in *Helfi Co. v. Silvex Co.,* 274 Fed. 653, in which the parties were engaged in actual competition with each other and one of them had put a certain spark plug upon the market closely resembling a similar device manufactured and sold by the other party. The same rule has been applied as to a system of soliciting life insurance. *Bristol v. Equitable Life Assur. Society,* 52 Hun 161, 5 N. Y. Supp. 131. These authorities establish the proposition that complainant had no property right in the plan or system of legal study involved herein, in the absence of fiduciary or contractual relations between them. It is admitted by appellant's brief that equity will not relieve in a case of this kind, unless a breach of trust is involved, citing *Boston Diatite Co. v. Florence Mfg. Co.,* 114 Mass. 69, but appellant asserts that a fiduciary relation was created by complainant's employment of defendant to advertise one of his works. Unfortunately the latter statement is not supported by any citation of authority and is contrary to the generally accepted theory under which advertising business is conducted. This employment did create a

contractual relation during its continuance, but complainant does not aver any breach of the contract.

Appellant also claims a property right in the words, "Key Number System," illustrated by the symbol of a key, and insists that this right is exclusive. Similar cases have been passed upon by our Supreme Court, which has held that the use of particular words and symbols in connection with articles of commerce will not be enjoined unless some deception is practiced thereby and there is a probability that the productions of one person will be substituted for those of another. *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co.,* 297 Ill. 359. The essence of unfair competition is fraud. It consists in the sale of the goods of one vendor for those of another, and if the defendant so conducts its business as not to substitute its goods for those of the complainant, the action fails. *Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U. S. 119. Similar views were expressed in *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, and in *Bolander v. Peterson,* 136 Ill. 215. In the last cited case the bill sought to restrain the use of a trade name adopted by appellant. Both parties to the suit were dealers in snuff. One of them claimed the exclusive right to use certain words descriptive of its goods and the court said, in substance, that a name merely descriptive of the article sold or its qualities, ingredients or characteristics, but which may be employed truthfully by other makers or dealers, is not entitled to protection as a trade-mark. The same rule is abundantly sustained by the federal authorities, and was exhaustively discussed in the recent case of *Benjamin T. Crump Co., Inc. v. J. L. Lindsay, Inc.,* 130 Va. 144, 107 S. E. 679, in which the court decided adversely to claimant.

It is true, as appellant has suggested, that Dr. Eliot originated the idea of a "five-foot shelf" which has proved to be of great commercial value, but this fact does not prevent any other person from having a book

Hughes v. West Publishing Co., 225 Ill. App. 58.

shelf of the same length, equipped with his own collection of literary masterpieces, and giving publicity to his act, if he so desires. The key has been used from time immemorial as the symbol of a means of obtaining access to something which is otherwise inaccessible. As such, it has been made symbolic of methods of acquiring riches, health, wisdom and spiritual welfare. There can be no exclusive right of property in the use of the word or the picture or facsimile of a key. The author of Wingate's Maxims, published in 1658, expressed the hope that every serious student of the law shall find some satisfaction in noting "the same key to open so many locks." This seems to have been the idea employed by both of the parties to this suit in their various publications and for which they claim originality. Students of history advise us that Buddha, who flourished about 550 B. C., employed a system of numbering his points and aphorisms upon the theory that such an enumeration was a "mnemonic necessity in an undocumented world." No reason is apparent why a similar system should not be employed for the assistance of students in studying a profession, replete with documentary lore.

In determining this controversy we are limited solely to a consideration of the allegations of the bill of complaint and cannot base our decision upon various matters which are discussed by appellant in the nature of proof of these allegations. The mere fact that defendant has imposed upon the public by claiming that its key number system is a new and original discovery is immaterial, even if similar numbering devices have been in use from the earliest publications down to the present time. Doubtless this discredits the claim of defendant for originality, but it does not constitute a ground for relief to the complainant. The legal propositions advanced by appellant are not disputed, but their applicability to the present case is questionable, in the absence from the bill of specific allegations

showing complainant's right to the relief demanded. There are no averments in the bill showing that the parties are in competition with each other or that complainant has been damaged by the unlawful appropriation of his system and devices by defendant or that complainant has an exclusive property right in the use of the words ''Key Number System'' and the employment of the symbol of a key as descriptive thereof. As was said by Prentis, J., in *Benjamin T. Crump Co., Inc. v. J. L. Lindsay, Inc., supra,* after an exhaustive discussion of authorities:

''A fair consideration of the facts of this case, however, and a proper regard for judicial precedents and expressions, which we believe to be based upon right, reason and a scrupulous regard for the substantial rights of litigants, as well as of the interests of the public for the preservation of fair competition in trade, lead us to conclude that there is no error in the decree of the trial court dismissing the bill.''

The decree of the circuit court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.