Aubrey Jones, Appellant, v. Sol D. Ulrich, Appellee.

Gen. No. 9,711.

Opinion filed November 2, 1950.
Released for publication November 28, 1950.

KENNETH A. GREEN, of Mattoon, and J. WARREN KIN-NEY, JR., of Cincinnati, Ohio, for appellant.

E. C. EBERSPACHER, of Shelbyville, and ALOIS W. GRAE, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff appellant Jones filed a suit in equity in the circuit court of Shelby county against defendant appellee Ulrich. This appeal ensued when the trial court granted defendant's motion to dismiss plaintiff's amended complaint and entered final judgment for the defendant.

As amended, plaintiff's complaint alleged that both the plaintiff and defendant were residents of Shelby county; that Ulrich, the defendant, had for several years owned and operated a welding shop in the City of Shelbyville in Shelby county, which he still owns and

operates; and that the business of the defendant during that period has been a general repair service on all types of machinery and the conducting of general welding operations. Paragraphs 3, 4, 5 and 6 of the complaint are as follows:

"3. That prior to July 25, 1948, plaintiff invented a spreader attachment to be used in the spreading of pulverulent material, such as phosphate;

"4. That on or about July 25, 1948, plaintiff made a confidential disclosure of the details of his phosphate spreader attachment to defendant and thereupon employed defendant to construct a phosphate spreader attachment embodying plaintiff's ideas;

"5. That on July 26, 1948, pursuant to the understanding reached with defendant, plaintiff spent the entire day at defendant's shop directing and supervising defendant and certain of his employees in the construction of a phosphate spreader attachment embodying plaintiff's ideas;

"6. That on July 27, 1948, the device built on the 26th was mounted to plaintiff's truck bed by defendant at plaintiff's request, whereupon plaintiff paid defendant in full for his services, including materials used in constructing plaintiff's spreader;"

The complaint then continues with an allegation that on various occasions after July 27, 1948, plaintiff, pursuant to an oral understanding with defendant, licensed the defendant to manufacture and sell phosphate spreader attachments embodying the ideas of the plaintiff's spreader; that in order to publicize his phosphate spreader attachment, plaintiff caused to be printed a quantity of circulars, one of which was attached to the complaint as plaintiff's Exhibit B, which circulars were delivered by the plaintiff to the defendant for distribution to the trade and prospective purchasers of the spreader, pursuant to the oral understanding or license which plaintiff had with defendant.

19

It is further alleged in the complaint that the defendant agreed to pay the plaintiff a royalty on spreaders manufactured and sold, and that the defendant further agreed to place the notation "Patent Pending" and "Jones Spreader" on each and every spreader manufactured and sold.

On May 4, 1949, the complaint alleges, plaintiff submitted a written license agreement which embodied the various oral understandings between the parties, which was attached to the complaint as plaintiff's Exhibit A.

The substance of Exhibit A was that defendant was granted a non-exclusive, non-transferable right to make and sell spreader attachments embodying plaintiff's invention, and there were agreements concerning royalties and accounting therefor, and the defendant further acknowledged that the plaintiff was the true and sole inventor of the device.

The complaint continues, alleging that the defendant refused to execute the above-written license agreement, and that on May 4, 1949, the plaintiff agreed to extend the terms of the oral license for thirty days.

On or about June 10, 1949, the complaint alleges, in response to numerous requests of the plaintiff for an accounting the defendant advised the plaintiff that the plaintiff owed the defendant $41.24, which represented the difference between amounts due the defendant for work on the plaintiff's behalf less the credits due the plaintiff for royalties on spreaders which had been manufactured and sold by the defendant through June 8, 1949, and that the said sum of $41.24 was paid to the defendant by the plaintiff on June 10, 1949.

The complaint alleges that the defendant refuses to render an itemized accounting for the period prior to June 8, 1949; and that since that date plaintiff has repeatedly advised the defendant that the oral license between the parties has been terminated; but that the

defendant, in complete disregard for the rights of the plaintiff, has been and still is manufacturing and selling spreaders embodying the teachings imparted to him by the plaintiff, and that the defendant refuses to account to the plaintiff for spreaders manufactured and sold to the date of the complaint (September 26, 1949) and that after the plaintiff had entered into an agreement with a third party, by which the third party was granted sole and exclusive rights in and to plaintiff's phosphate spreader attachment, on or about the 26th day of July 1949, that the defendant, through an attorney, advised the third party that it should not enter into an agreement with plaintiff inasmuch as the defendant was the true inventor of the spreader attachment rather than the plaintiff. The complaint concludes by alleging that the defendant in further violation of his rights and obligations to the plaintiff, has continued the manufacture and sale of the spreader embodying the plaintiff's teachings, has issued circulars describing a phosphate spreader named "Eezee Way" which is a substantial duplicate of the plaintiff's device, and that the acts of the defendant if permitted to continue will cause irreparable damage to the plaintiff and will result in unjust enrichment of defendant at the expense of the plaintiff; and that the defendant has filed in his own name as sole inventor a patent application in the United States Patent Office directed to the subject matter of the plaintiff's spreader attachment.

Plaintiff prayed for an injunction restraining the defendant Ulrich and his agents, et al., from making, selling or using any machine or device made in accordance with or embodying the teachings of plaintiff's spreader; that the court order the defendant to deliver up for destruction all circulars advertising defendant's spreader and enjoin the defendant and his agents from purchasing or distributing any other cir-

21

culars similar to the one in question; that the court declare the defendant a trustee *ex maleficio* of the present pending patent application for the benefit of the plaintiff and that the court order the defendant to assign the said application to the plaintiff; that the plaintiff be reimbursed for all expenses of this action including costs and attorneys' fees; and that the court award any and other further relief as might be deemed equitable.

The defendant filed a motion to dismiss the complaint or strike parts thereof and an alternative motion that the complaint be made more definite and certain.

The substance of the motion to dismiss was: (1) that it appeared from the face of the complaint that the court had no jurisdiction of the subject matter of this action in that State courts have no jurisdiction to determine who is the true inventor entitled to patent rights nor to enforce the (patent) laws enacted by the Congress of the United States; (2) that it appeared from the face of the complaint that the plaintiff failed to allege the existence of any trade secret or secret process known only to the plaintiff communicated to the defendant in the course of confidential employment; (3) that there is no allegation that the defendant contracted not to use any trade secret or secret process of which he was confidentially informed by plaintiff, both the latter two allegations, the motion stated, being an essential element in the cause of action; (4) the motion further alleged that certain paragraphs of the complaint were conclusions of law or were immaterial; and (5) that the complaint was improper in that it prayed for relief which the court had no power to grant.

The motion to dismiss was argued, and after argument the court caused to be entered a docket entry as follows:

"The court finds the plaintiff is not entitled under the pleadings to injunctive relief. Therefore petition for temporary injunction is denied. The contract made has been terminated by defendant, and device made public by issue of pamphlet explaining operation of device and how made, to public by plaintiff. The question of patentable rights are for U. S. Courts. That plaintiff is entitled to accounting from defendant during existence of contract, and to no other or further relief prayed."

Subsequently the court granted leave to amend the complaint by deleting the prayer for royalties due under the oral license between the parties, and the plaintiff appellant elected to stand on the balance of his complaint. Thereupon the court entered an order dismissing the complaint as amended, from which order this appeal is taken.

Although the parties argue the merits in their briefs, the only question before this court is whether the complaint herein stated a cause of action against the defendant.

The question arises as to whether or not the trial court had jurisdiction of the subject matter of the suit. The defendant appellee raised the question before the trial court and again in this court by relying on sec. 48, Title 35 USCA, R. S. sec. 4899, which reads as follows:

"Every person who purchases of the inventor, or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor. R. S. Sec. 4899."; and cites *Wade v. Metcalf*, 129 U. S. 202,

32 L. Ed. 661, 9 S. Ct. 271, and *Dable Grain Shovel Co. v. Flint,* 137 U. S. 41, 34 L. Ed. 618, 11 S. Ct. 8.

This section, however, was not drafted to cover a situation where an article is surrendered to one for manufacture under an agreement. That this is a proper interpretation of this section is borne out by a study of the cases cited thereunder.

In the *Wade* case, *supra,* the plaintiff, inventor and the defendant were partners in a partnership which built a machine with plaintiff's knowledge and assistance, wherein the court properly held that after dissolution of the partnership the particular machine might be used by the co-partner of the plaintiff even though plaintiff should later obtain a patent on it.

The *Dable* case, *supra,* held that where the plaintiff-inventor built a specific machine for the defendant's use the defendant had a right to use that specific machine after the plaintiff had quit the defendant's employ, and after plaintiff had obtained a patent on said machine.

In the instant case the gist of the action is the wrongful use of a confidential disclosure of an invention. The statute relied on by the defendant appellee under such a state of facts obviously does not apply. The facts in the cases cited above are clearly distinguishable from the facts alleged in the complaint in question, as in those cases there was no question as to any breach of confidence, and moreover a *specific* machine was involved.

██ The mere fact that a patent or an application for a patent is involved in a case does not oust the jurisdiction of the State courts in favor of the Federal courts. In a direct proceeding for the infringement of a patent the jurisdiction of the Federal courts is exclusive, but where the question arises collaterally it not only may be determined by the State courts, but in the absence of diversity of citizenship must be

so determined. *Henry Pratt & Co. v. Paris Gas Light & Coke Co.*, 155 Ill. 531, aff'd 168 U. S. 255; *Hartell v. Tilghman*, 99 U. S. 547; *Illinois Watch Case Co. v. Ecaubert*, 177 Ill. 587.

The defendant appellee before the trial court urged that the amended complaint should be dismissed for the reason that there was no allegation concerning any of the circumstances of the alleged disclosure; that there was no allegation that the defendant appellee gained the disclosure by trick, artifice or fraud; that there was no allegation that there was any written or oral contract to keep the disclosure confidential or agreement to make no machines other than under the alleged oral license, and urges the same objections to the complaint in this court on appeal. Defendant appellee insists that there is no obligation on the part of one who owns and operates a welding shop engaged in general repair of machinery and general welding operations, when an alleged inventor employs him to make something for him, and discloses the details of how the article should be made without telling him that the disclosures are secrets and the welder does nothing to induce the inventor to disclose such secrets. He further insists that under such circumstances the law does not imply a contract.

With these contentions we cannot agree.

■ It may fairly be inferred from the alleged facts of the complaint that the defendant was an artisan skilled in his trade, having been in the welding and machinery repair business for several years last past; that plaintiff knowing of defendant's trade and his skill therein employed the defendant to construct the spreader involved after making a confidential disclosure of the details thereof; and that the following day the plaintiff directed the defendant and his employees in the construction of a phosphate spreader attachment embodying the plaintiff's ideas. In such

25

a case precedent establishes a confidential relationship irrespective of a contract between the parties not to disclose the subject matter of the disclosure, and irrespective of artifice or trick by the disclosee to obtain the disclosure. The complaint alleges an agreement between plaintiff and defendant, the sole purpose of which was to provide for continuing manufacture and sale of the spreader with ensuing royalties to be paid the plaintiff. Such an agreement in itself implies a confidential relationship because without such confidence, such an agreement in practicality would be a nullity.

In *Hoeltke v. C. M. Kemp Mfg. Co.,* 80 F. (2d) 912, cert. den. 298 U. S. 673, plaintiff had revealed his invention to defendant shortly after he had applied for letters patent. Defendant manufactured the invention and sold the same prior to the granting of the patent to the plaintiff. The relationship of those parties, as here, was that of prospective licensor and licensee. The court stated on page 923:

"It is argued that there was no confidential relationship existing between complainant and defendant with respect to the disclosure of complainant's invention; but this contention is groundless. Complainant offered to disclose his invention to defendant with a view of selling it to defendant, and so stated in his letter. Defendant was interested in the proposition and invited the disclosure, otherwise it would not have seen complainant's specification and drawings until the patent was granted. While there was no express agreement that defendant was to hold the information so disclosed as a confidential matter and to make no use of it unless it should purchase the invention, we think that in equity and good conscience such an agreement was implied; and having obtained the disclosure under such circumstances, defendant

ought not be heard to say that there was no obligation to respect the confidence thus reposed in it."

The cases cited by the defendant either do not involve a confidential relationship, *Candee, Swan & Co. v. Deere & Co.,* 54 Ill. 439, or do not involve a question of a trade secret; *Mahler v. Sanche,* 223 Ill. 136; hence may be easily distinguished from the facts as alleged in the case at bar.

█ The court in the *Hoeltke* case, *supra,* stated on pages 922 and 923:

"We come then to the question as to whether complainant is entitled to relief on account of the manufacture and sale by defendant of devices which embody complainant's invention prior to the grant of his patent; and, as heretofore indicated, we think that this, also, must be answered in the affirmative. The general rule, of course, is that the monopoly of a patent which entitles a patentee to damages for infringement commences only when the patent is granted; but where, in advance of the granting of a patent, an invention is disclosed to one who, in breach of the confidence thus reposed, manufactures and sells articles embodying the invention, such person should be held liable for the profits and damages resulting therefrom, not under the patent statutes, but upon the principle that equity will not permit one to unjustly enrich himself at the expense of another. The question was before the Circuit Court of Appeals of the Seventh Circuit in the recent case of *Booth v. Stutz Motor Car Co. of America* (C. C. A. 7th) 56 F. (2d) 962, and we think that the decision there rendered is eminently sound and just. It would be a reproach to any system of jurisprudence to permit one who has received a disclosure in confidence to thus appropriate the ideas of another without liability for the wrong."

27

In the case of *Pidot v. Zenith Radio Corp.*, 308 Ill. App. 197, the court stated on page 215:

"We also agree with the contention of plaintiffs that when they disclosed their design to the defendant a confidential relationship arose."

■ It is apparent from a careful consideration of the implications and significance of this case that reason supports the decided authorities in this connection. It is common knowledge that an inventive mind is rarely accompanied by the skill necessary to transform a novel thought into the tangible invention and produce it for the market. An artisan employed as defendant is alleged to have been, certainly occupies a position as replete with confidence imposed as does the prospective licensee in the *Hoeltke* case, *supra*. His position is not only necessary to the final marketing of the device, but indeed is vital to its very conception. To hold that such a person may accept such disclosures and in turn put them to his own use without responsibility to the inventors would be to deny to the inventors the mechanical skill they so vitally need to first make the pilot model and demonstrator of their invention, and later manufacture the same, and would as a result materially impede the industrial progress of the nation. A confidential relationship was properly alleged to have existed between these parties by the complaint.

■ Nor is the validity of plaintiff's cause of action as alleged in the complaint affected by the fact that on or about July 27, 1948, plaintiff caused circulars to be printed containing exterior views of the device and certain printed claimed accomplishments of it. Prior to that day of July 27, 1948, the complaint alleges that plaintiff had confidentially disclosed his device to the defendant. Though we may reasonably infer that such circulars were afterwards distributed to the general public, it is clear as a matter of law

28

that defendant, being himself burdened with a prior confidential disclosure, may not now set up a subsequent publication or even abandonment of the invention to the general public to escape the consequences of his alleged violation of the confidential disclosure made earlier to him. *Allen-Qualley Co. v. Shellmar Products Co.* (D. C. Ill.) 31 F. (2d) 293, aff'd 36 F. (2d) 626; *Bohlman v. American Paper Goods Co.* (D. C. N. J.) 53 F. Supp. 794; *Kelly Mfg. Co. v. Brower,* 1 Tenn. App. 428; see also annotations 170 A. L. R. 449, 487, n. 2.

The *Allen-Qualley* case, *supra,* involved a bill for an injunction to bar defendant from making use of or selling a certain candy wrapper and the machinery for making the same. The details of the invention were obtained by the defendant as a prospective licensee as in the case at bar. The plaintiff later marketed the wrapper, thus revealing it to the general public. The District Court stated, in affirming the decision for the plaintiff, at pages 296 and 297:

"It is well established that equity will enjoin the use and disclosure of trade secrets, such as processes, formulae, and inventions learned in confidence. The difference between secret processes and patents is that the owner of a patent has a monopoly against all the world, while the owner of a secret process has no right 'except against those who have contracted, expressly or by implication, not to disclose the secret, or who have obtained it by unfair means.' *See Tower Mfg. Co. v. Monsanto Chemical Works* (D. C.) 20 F. (2d) 386. The jurisdiction of equity to protect such trade secrets is founded upon trust or confidence. The court 'fastens the obligation upon the conscience of the party, and enforces it against him in the same manner as it enforces against a party to whom a benefit is given, the obligations of performing a promise on the faith of which the benefit has been

29

conferred.' *Hopkins on Trade-Marks, Trade-Names and Unfair Competition* (4th Ed.) 239. Whether the subject-matter is patentable or not, if the designer discovers and keeps secret a process of manufacture, though he will not have an exclusive right to it as against the public, after he shall have published it, or against those who in good faith acquire knowledge of it, yet he has a property right, which a court of chancery will protect against one who in bad faith and breach of confidence undertakes to apply it to his own use. Cases in which this doctrine have been invoked are *Booth v. Stutz Motor Car Co. of America* (C. C. A.) 24 F. (2d) 415; *Thum Co. v. Tloczynski,* 114 Mich. 149, 72 N. W. 140, 38 L. R. A. 200, 68 Am. St. Rep. 469; *Eastman Kodak Co. v. Powers Film Products,* 189 App. Div. 556, 179 N. Y. S. 325; *Boylston Coal Co. v. Rautenbush et al.,* 237 Ill. App. 550. See, also, 20 *R. C. L.* 1163.

''The plaintiff at the time it divulged the information to defendant was not yet exhibiting the product to the world. It was giving information to nobody except to the defendant, as a proposed licensee, and under an agreement that the information should be treated as confidential. The relationship between them was one of trust and confidence. The language of Mr. Justice Holmes in *E. I. DuPont de Nemours Powder Co. v. Masland,* 224 U. S. 100, 37 S. Ct. 575, 61 L. Ed. 1016, is peculiarly pertinent, when he says: 'Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be'. . .

''It may well be that if defendant had never been in a confidential relationship with the plaintiff, upon the plaintiff's publication to the world of its wrap, the defendant might rightfully have purchased the same. Not by any action of plaintiff, but by its own

30

violation of confidence, it has deprived itself of that opportunity, which is open to the rest of the world. It cannot obtain in confidence the details of an alleged invention, of the process for making the same, and of the machine by which it is made, and proceed to make the product by that or similar process, or by equivalent or similar machine or methods before the plaintiff makes its publication to the world, and then assert that it is a member of the public to whom the publication has been made. A court of equity cannot approve such breach of confidence.''

Defendant next contends that the complaint fails to allege the existence of a trade secret or process and further contends that without such an allegation the complaint fails. Defendant Ulrich points out that paragraphs 4 and 5 of the complaint, quoted above, alleged that defendant constructed a phosphate spreader ''embodying plaintiff's ideas,'' and that there is no allegation that plaintiff furnished any plans, designs, specifications or models which would give rise to the existence of a trade secret or process.

Assuming *arguendo* that the absence of such an allegation would be fatal to the statement of a cause of action, the allegation of disclosure of ''the details'' of the spreader in paragraph 4 of the complaint makes it reasonably inferable that the plaintiff's idea was not a mere theory, but was concrete to the point where it was entitled to protection by a court of equity. We note that plaintiff's idea was specific to an extent that the following day plaintiff was able to direct the defendant in the manner of constructing the tangible device. Plaintiff did not merely have in mind an idea, but it is fairly inferable that he had in mind a specific device which needed only his directions and the defendant's mechanical skill to reduce it to material form within twenty-four hours.

31

In cases of this type what is really protected by the court of equity is not the secret invention or process but the secret of it in certain circumstances. See Anno. 170 A. L. R. 449, 452, n. 9.

The cases dealing with liability for the use of ideas of another incline to the view that a mere idea and abstraction or plan may be lost by a voluntary communication. *Hughes v. West Pub. Co.,* 225 Ill. App. 58; *Williamson v. New York Cent. R. Co.,* 258 App. Div. 226, 16 N. Y. S. (2d) 217; *Haskins v. Ryan,* 71 N. J. Eq. 575, 64 Atl. 436, aff'd 75 N. J. Eq. 623, 73 Atl. 1118; *Lueddecke v. Chevrolet Motor Co.,* 70 F. (2d) 345; *Smoley v. New Jersey Zinc Co.,* 24 F. Supp. 294, aff'd 106 F. (2d) 314.

 Although the idea to be protected must be concrete to a degree, there appears no requirement that it must be tangible and in a material form to entitle it to the protection of a court of equity. The principal value is in the inventive idea when clearly defined, as it is fairly inferable that the alleged idea was defined at the time of disclosure, and it would seem arbitrary to protect the inventor against a breach of confidence only when he can immediately exhibit a material thing demonstrating his invention.

The alleged idea and the device there resulting in connection with the other circumstances as alleged in the complaint, is entitled to the protection of a court of equity against wrongful disclosure through a valid confidence. *Edward Becher v. Contoure Laboratories, Inc.,* 279 U. S. 388; *Hollywood Motion Picture Equipment Co. v. Furer,* 16 Cal. (2d) 184, 105 P. (2d) 299.

In the *Hollywood* case, *supra,* it was held that the court erred in ruling that no cause of action was stated where the complaint alleged that the plaintiff had invented certain devices, and for the purpose of having them manufactured for sale delivered wooden patterns thereof to the defendant to make certain castings in metal. The defendant agreed to make only those cast-

ings which were ordered by the plaintiff and not otherwise. The defendant, nevertheless, did manufacture other castings and sold them to other parties.

 The defendant appellee also contends that there is no allegation that, whatever the plaintiff's idea was, it was a new or novel idea. In *Pidot v. Zenith Radio Corp., supra,* the court stated at page 215:

"We agree with the contention of plaintiffs that the basis of recovery is breach of confidence and that it is not necessary for plaintiffs to establish that their design was new and novel as to the entire world."

A mere want of novelty is not a defense which will deny the protection of equity in the courts of this State.

 In view of the foregoing it is the opinion of this court that the amended complaint in this cause taken in its entirety, states a good cause of action, which if proven by a preponderance of the evidence would entitle the plaintiff appellant to relief by a court of equity, and that the trial court erred in entering an order granting the motion to dismiss the complaint. The order of the circuit court of Shelby county is hereby reversed and the case remanded for action not inconsistent with this opinion.

*Reversed and remanded.*