**CROCAN CORPORATION, an Illinois Corporation, Plaintiff,**

v.

**SHELLER–GLOBE CORPORATION, an Ohio Corporation, Defendant.**

**No. 69 C 1190.**

United States District Court,
N. D. Illinois, E. D.
Nov. 21, 1974.

---

James P. Chapman, Fredric N. Richman, Chicago, Ill., for plaintiff.

Ralph Miller, Franke & Miller, Chicago, Ill., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BAUER, District Judge.

## I. FINDINGS OF FACT

### A. *The Parties and Jurisdiction*

1. Plaintiff Crocan Corporation ("Crocan"), is a corporation incorporated under the laws of the State of Illinois having its principal place of business in the State of Illinois.

2. Defendant Sheller-Globe Corporation ("Sheller-Globe"), is a corporation incorporated under the laws of the State of Ohio having its principal place of business in the State of Ohio.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of ten thousand dollars.

### B. *The Unfair Trade Practice*

4. Sheller-Globe did obtain confidential information from Crocan pursuant to the confidential relationship which existed between Crocan and Sheller-Globe when Sheller-Globe solicited the business of Crocan in mid-1966 and continued to manufacture straps for Crocan thereafter.

5. Sheller-Globe acted wrongfully in mid-1966 in reacquiring the business of Crocan by failing to disclose to Crocan its preconceived intention to manufacture straps in competition with Crocan and by falsely representing to Crocan that Sheller-Globe would manufacture a strap only for Crocan and would not market its own strap. Crocan believed these representations by Sheller-Globe and reposed trust and confidence in Sheller-Globe in renewing the relationship with Sheller-Globe in mid-1966.

6. In its final decision to manufacture its own strap and the way in which it designed, manufactured, packaged and distributed its own strap, Sheller-Globe relied in substantial part upon confidential information obtained as a result of its confidential relationship with Crocan during the period from mid-1966 through February, 1969.

7. The confidential information Sheller-Globe so obtained aided it in determining the nature of the recipe for its tie-down strap, the avoidance of field testing, the selection of the shape of the strap, the selection of the most marketable lengths, the method of packaging the straps, the size and nature of the hooks to be used, and at least some of the markets to be exploited or avoided.

8. While there were many straps on the market in early 1969 which Sheller-Globe could have analyzed and copied for its strap, the sizes, quality, method of distribution, and so on, varied widely. A determination of which strap to copy, how to package the strap and all other aspects of designing, selling and marketing a new product would have been a costly and time-consuming process and Sheller-Globe in fact did not seek to copy products or methods of any other strap distributor other than Crocan. Rather, by wrongfully appropriating the information which Sheller-Globe obtained from Crocan, Sheller-Globe was able to forthwith market its own strap without lengthy trial and error field tests and marketing with regard to the design, packaging and exploitation of its own strap.

## II. CONCLUSIONS OF LAW

1. Jurisdiction is proper under 28 U.S.C. § 1332 which provides this Court with jurisdiction of original actions wherein there is diversity of citizenship and matters in controversy exceeding $10,000.

██ 2. There existed a confidential relationship between Crocan and Sheller-Globe from mid-1966 until at least February, 1969.

██ The duty to protect an employer's trade secret exists apart from a contract embodying the obligation. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917).

In Jones v. Ulrich, 342 Ill.App. 16, 95 N.E.2d 113, 117 (3rd Dist. 1950) where plaintiff engaged defendant, an independent contractor, to manufacture a phosphate spreader for it, the court stated:

> "In such a case precedent establishes a confidential relationship irrespective of a contract between the parties not to disclose the subject matter of the disclosure, . . ."

And as pointed out in Heyman v. Winarick, 325 F.2d 584, 586 (2nd Cir. 1963):

> "While there is no indication that plaintiff extracted from defendants a promise of trust with respect to information disclosed during their negotiations, an express agreement is not a prerequisite to the establishment of a confidential relationship. [Citing several cases.] A relationship of trust and confidence may naturally result from the circumstances surrounding the dealings between the parties."

3. Sheller-Globe did not develop its "tie-downs" independently; but rather it misappropriated confidential information Crocan entrusted to, or made available to the defendant, when the defendant was manufacturing tie-downs exclusively for plaintiff. In Head Ski Co., Inc. v. Kam Ski Co., Inc., 158 F. Supp. 919 (D.Md.1958), defendants, some of whom were former employees of plaintiff, commenced to manufacture skis which were substantially similar to those manufactured by plaintiff but which had certain admitted improvements. Plaintiff sought an injunction against the use by defendants of any "trade secrets which the individual defendants learned while working for plaintiff . . . ."

Defendant initially contended that all of the disputed processes and methods could have been learned by anyone interested in manufacturing skis simply by examining the plaintiff's skis which were publicly marketed—that in fact these processes and methods were known and used by aircraft mechanics and engineers.

In granting a judgment for plaintiff, the trial court said that defendant's conception of a trade secret or protected confidential information was too restricted and technical; rather, as plaintiff contends in this case, knowledge of what constitutes the best way to manufacture, package, distribute and sell a product may in itself constitute a trade secret or confidential information. The court stated in granting plaintiff full relief (158 F.Supp. at 923):

> "This [argument] overlooks the fact that a knowledge of the particular process, method or material which is

most appropriate to achieve the desired result may itself be a trade secret. So may a knowledge of the best combination of processes, methods, tools and materials. 'The mere fact that the means by which a discovery is made are obvious, that experimentation which leads from known factors to an ascertainable but presently unknown result may be simple, we think cannot destroy the value of the discovery to one who makes it, or advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtains the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer . . . .' A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531, 538, 539. 'A trade secret may consist of any formula or pattern, any machine or process of manufacturing, or any device or compilation of information used in one's business, and which may give to the user an opportunity to obtain an advantage over competitors who do not know or use it.' A. L. I. Restatement of Torts, sec. 757(b); Mycalex Corp. v. Pemco Corp., D.C.D.Md., 64 F.Supp. 420, 423.''

The court held that defendants were liable because they developed their product through use of information they obtained from plaintiff rather than through independent trial and error and investigation (158 F.Supp. at 922–923):

"Similarly, although the materials used are available for purchase by anyone, the choice of a particular material was dictated by years of experimenting. Tests of a ski purchased on the open market would have disclosed many of the secrets, if one knew which tests were important. But the qualities for which one should test the materials are an important part of the secrets learned over the years. Defendants did not buy a Head ski on the open market and test the materials. They had learned while working for Head what materials he used, and where a test was necessary they tested materials on which they had been working for Head. With respect to the matters which could have been learned by testing, the following quotation from Franke v. Wiltschek, 2 Cir., 209 F.2d 493, 595, is pertinent: 'It matters not that the defendants could have gained their knowledge from a study of the expired patent and the plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from the plaintiffs via the confidential relationship, and in so doing incurred a duty not to use it to plaintiff's detriment.' ''

4. Sheller-Globe wrongfully induced Crocan to re-engage Sheller-Globe in mid-1966 for the purpose of manufacturing Crocan's straps.

The Restatement of Torts, § 757 states:

"Although given information is not a trade secret, one who receives the information in a confidential relationship *or* discovers it by improper means may be under some duty not to disclose or use that information. Because of the confidential relationship or the impropriety of the means of discovery, he may be compelled to go to other sources for the information."

■ In other words, improper means used to gain information is a separate basis of liability, regardless of whether the information constitutes a technical trade secret in the narrow sense of the word.

Section 757 of the Restatement then refers to § 759, for discussion "as to the use of improper means to acquire information. . . ." In addition, § 759 states:

"One who, for the purpose of advancing a rival business interest, procures by improper means, information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information."

Comment (b) to this section states that the rule "applies to information about one's business whether or not it constitutes a trade secret. . . .

The Section states the rules of liability applicable only when the information is procured by improper means."

As to the types of "improper means" contemplated by the rule, Comment (c) to § 759 refers to the very allegation made in the instant case: "fraudulent misrepresentations."

 Plaintiff's evidence sustains a cause of action under the Restatement theory discussed above—that defendant fraudulently gained plaintiff's confidence for the purpose of learning all that it could about plaintiff's business—that is, the manufacture, sale and distribution of rubber tie-downs with the preconceived purpose that as soon as defendant had learned all necessary and pertinent information about the tie-down business, it would commence to manufacture and sell a competitive tie-down.

Accordingly, it is hereby ordered that Sheller-Globe Corporation shall be liable for damages to Crocan Corporation as a result of the said breach of the confidential relationship. The parties are directed to schedule a hearing on day certain for further argument and evidence on the measure of damages.