# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS THE DISTRICT COURTS, AND THE · COMMERCE COURT

---

### In re JOHN F. DOYLE & SON.

(Circuit Court of Appeals, Third Circuit.   December 4, 1913.)

#### No. 1,762.

BANKRUPTCY (§ 143*)—ASSETS—LIQUOR LICENSE—RENEWAL.

Under a rule of the court of quarter sessions of Philadelphia county that all persons holding liquor licenses granted or transferred to them during the previous year, against whom no specific remonstrance has been filed, will be presumed to be entitled to a renewal of their licenses, where a license issued to bankrupts was unexpired at the time of their adjudication, the right to the unexpired term, with its inseparable incident, to wit, the contingent right to a renewal, ceased to belong to the bankrupts, and both passed to a purchaser under a sale by the bankrupts' receiver, so that the bankrupts could properly be compelled to join in such proceedings as were necessary to make the sale effective for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224;  Dec. Dig. § 143.*] ·

Petition for Review from the District Court of the United States for the Eastern District of Pennsylvania;  J. Whitaker Thompson, Judge.

In the matter of bankruptcy proceedings of John F. Doyle & Son. Petition to review an order (205 Fed. 543) denying an application of the trustee to compel the bankrupts to join in an application by a purchaser for a renewal of the bankrupts' liquor license.   Reversed.

Otto Wolff, Jr., and A. M. Beitler, both of Philadelphia, Pa.; for petitioner.

Michael Francis Doyle, of Philadelphia, Pa., for respondent.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge.   On October 16, 1912, a creditors' petition was filed against John F. Doyle & Son.   The bankrupts were then selling liquor at retail in the city of Philadelphia under a license that did not expire until May 31, 1913.   They owned also the bar fixtures and a small quantity of stock, but the license

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

209 F.—1

was practically their only asset. In the schedule they valued the combined property at $12,000, and the appraisers appointed by the district court had previously valued it on November 8 at a few hundred dollars more. In the district courts of Pennsylvania (and in some other jurisdictions also) a license to sell liquor has been regarded from the beginning of the present bankruptcy law as a salable asset, although it is no doubt a peculiar kind of property and in certain aspects is often properly described as merely a personal privilege. Re Fisher (Ref. Mass.) 1 Am. Bankr. Rep. 557, affirmed (D. C. Mass.) 3 Am. Bankr. Rep. 406, 98 Fed. 89, affirmed (C. C. A. 2d Cir.) 103 Fed. 860, 43 C. C. A. 381, 51 L. R. A. 292; Re Becker (D. C. Pa.) 3 Am. Bankr. Rep. 412, 98 Fed. 407; Re Emrich (D. C. Pa.) 101 Fed. 231; Collier on Bankruptcy (9th Ed.) 1011. The logical step in advance was taken by Judge Holland in Re Wiesel (D. C. Pa.) 22 Am. Bankr. Rep. 59, 173 Fed. 718, where it was held that a bankrupt's right to apply for a renewal of his license is also an asset that passes to the trustee.

The right to apply for a renewal, which Doyle & Son were enjoying as an incident to the license itself, was made more valuable by a rule of the court of quarter sessions of Philadelphia county:

"All persons holding licenses granted to them during the last previous year, or transferred to them during that year, against whom no specific remonstrance has been filed, will be presumed to be entitled to a renewal of their licenses."

This rule expresses the general and long-established custom throughout the state. O'Brien's License, 1 Pa. Co. Ct. R. 363; Justin's Application, 2 Pa. Co. Ct. R. 22; Rief's License, 2 Lehigh Val. Law Rep. (Pa.) 400; Arnold's Application, 1 Northampton Co. R. 93. The quarter sessions has the exclusive jurisdiction in Philadelphia and elsewhere to grant, transfer, and renew licenses, and of course every transfer is subject to its approval. This fact is well understood, and, under the practice of the district court, every sale in bankruptcy is ipso facto void if such approval be not given. What the buyer gets therefore is practically nothing except the chance that he may be permitted to step into the bankrupt's shoes. But the chance is really a probability, and for this contingency buyers are readily found, and large sums of money are often bid.

As an example, we may take the case now in hand. The receiver (who was appointed on October 18 and afterwards became the trustee) sold the license with the right of renewal early in November for a sum that does not appear with precision but may be approximated from the fact that, when the sale was set aside (apparently for inadequacy of price), the objecting creditor was obliged to protect the receiver from loss on a resale by entering bond in the sum of $18,000. This was not an excessive sum, for when the resale was had the price bid was $19,300. This sale the court confirmed on December 4, and Michael Barbrus, the buyer, acquired thereby the rights to which we have referred, namely, the unexpired term, and also the right to a renewal, but of course subject in both particulars to the approval of the quarter sessions. Unfortunately for Barbrus

the quarter sessions refused to consent to the transfer, and this refusal necessarily destroyed whatever right Barbrus might otherwise have had to a renewal. At first the bankrupts declined to join in asking for the transfer, although they were bound to join (Re Fisher, supra; Re Becker, supra); and they only consented when the referee ordered them to do so on pain of punishment for contempt. We are not advised why the quarter sessions refused the transfer; but, as the receiver was also asking (although apparently without lawful authority) that the annual license from June 1, 1913, might be issued to himself on behalf of the creditors, it is possible that in this conflict of petitions the quarter sessions may have determined to refuse them all. At all events, the petitions both of Barbrus and of the receiver were refused on March 10; and this refusal at once set aside the sale to Barbrus and left the unexpired term of the license just where it was before the sale. The only fact up to this point that we have not mentioned is the adjudication. This was entered on January 29, and it is mainly upon this fact that the present dispute turned in the District Court.

The controversy arises in this way: On March 18 the quarter sessions granted to the bankrupts a license for the year beginning June 1, 1913. The grant was made upon an application that was presented a few days after the adjudication, and for this reason the license was regarded by the District Court as after-acquired property. After the action of the quarter sessions on March 10 and 18, the receiver applied to the District Court for a new order to sell the unexpired term with the privilege of renewal; and on March 31 Francis Canuso became the buyer for $15,500. The sale was confirmed on April 2, but the bankrupts refused to join in applying to the court for a transfer of the unexpired term and for a renewal from June 1. The referee made an order directing them to join, and, when they persisted in refusing, he certified to the district court that they were in contempt. Thereupon the court issued an appropriate rule to show cause and after due hearing discharged the rule, holding that the bankrupts had been justified in refusing. At the same time the referee's order directing the bankrupts to join in the application to the quarter sessions was reversed, and in due season the present petition to revise both orders was applied for and granted.

The decision of the District Court was put upon the ground that the license granted to the bankrupts on March 18 was after-acquired property and was not part of the bankrupts' estate. The learned judge cited Buck's Estate, 185 Pa. 57, 39 Atl. 821, 64 Am. St. Rep. 816, and Whitlock's License, 39 Pa. Super. Ct. 34, and said inter alia:

"In the present case the receiver, after adjudication, applied for a renewal of the license, which application was refused by the quarter sessions court. Whatever inchoate rights existed prior to the adjudication and passed out of the bankrupt at the time of his adjudication were in the nature of a personal privilege. If the license court had seen fit to confer this privilege upon the receiver of the bankrupt estate, it would have been within its discretion to do so. The action of the court of quarter sessions in granting the license to the bankrupt vested the personal privilege arising under the license in the bankrupt as of the time the license was granted."

We think there was error in the action of the district court. The right to apply for a renewal was an inseparable incident to the unexpired term. In Johnson's Appeal, 115 Pa. 133, 8 Atl. 36, 2 Am. St. Rep. 539, this was decided concerning a tenant's right to renew his lease; and the right or opportunity to renew a license is put upon a similar footing in Aschenbach v. Carey, 224 Pa. 309, 73 Atl. 435. The Supreme Court of Pennsylvania there said, quoting with approval a part of the opinion of the orphans' court in Buck's Estate, supra:

"* * * Such a place has necessarily a greatly enhanced market value, just as it may also have by reason of good will arising from the mere carrying on of a prosperous business during a time sufficiently long to give it a reputation. If the occupancy of the license is under a lease having some time to run, the unexpired term, in case of his death, is an asset of his estate, of which good will and the opportunity of obtaining a transfer or grant of a license are inseparable incidents."

And in Buck's Estate, 185 Pa. at page 60, 39 Atl. at page 822, 64 Am. St. Rep. 816, the Supreme Court said:

"The opportunity to secure a transfer of the license and a renewal at the end of the year may materially affect the value of the fixtures, good will, and unexpired term of the lease."

This was approved in Graeser's Estate, 230 Pa. 145, 79 Atl. 242.

We think, therefore, that when the adjudication was entered the right to the unexpired term, with its inseparable incident, the contingent right to a renewal, ceased to belong to the bankrupt, and that both rights were sold to Canuso by the receiver on March 31. It follows that the bankrupts were properly ordered to join in such proceedings as were necessary to make the sale effective for the benefit of creditors.

We do not regard the decision in Whitlock's License as necessarily opposed to this conclusion. The order of the quarter sessions that was disapproved of in that case is shown to have been based upon petitions that were insufficient in jurisdictional averments, and this ground alone was enough to support the judgment of the Superior Court. The court recognized that the other ground that was gone into was presented upon a record that was certainly somewhat confused; but it is not to be denied that some expressions in the opinion justified the District Court in relying upon them. We should regret to differ from the Superior Court in such a matter, but we think we need not contemplate such a situation, for Whitlock's License did not directly present the question now under consideration, and therefore the court does not discuss it. Apparently it is taken for granted that the contingent right to a renewal continues to belong to a bankrupt after adjudication, and that the trustee and the creditors have no interest in it. But this is just the point now raised and decided, namely, that the contingent right does *not* continue to belong to the bankrupt but accompanies the license as an inseparable incident thereto. If this were not true, a bankrupt would have the power in many instances to divert from his creditors and retain for himself much of the value inherent in his license merely by filing a voluntary

petition a short time before making an application for renewal. This possibility is pointed out in the brief for the trustee, and we agree that such a result should be prevented unless established principles make it unavoidable. As already indicated, we do not find ourselves obliged to reach so undesirable a conclusion.

The order of the District Court is reversed, with directions to proceed in accordance with this opinion.