The complainant is engaged in the business of manufacturing paper products such as napkins, handkerchiefs, waxed paper and the like. In 1946 it became interested in the possibility of producing a paper which would have the appearance and softness of textiles and which could be used for draperies. It was essential to the success of such a product that it should be soft, flame-proof, and have no offensive odor or discoloration. And it was also important that the effect of moisture upon the paper should be confined within narrow limits.
Complainant employed a chemist but since he was busy with the general chemical problems of the corporation, it was decided that an outside chemist should be hired who could devote his time to the discovery and development of a process which would accomplish the desired result at a cost that would make possible commercial production. Complainant had previously employed a chemist having the same name as the defendant, Sullivan, and Robert Marcalus, vice-president of the firm, sought to contact him but, instead, reached the defendant. Upon learning that defendant was also a chemist, Marcalus told Sullivan that he had a chemical problem for solution and suggested that Sullivan might be interested. He was, and a meeting was arranged. *Page 436 
At the meeting Marcalus explained to Sullivan what he desired. Sullivan worked for a large food concern and had had no previous experience with the processing of paper, but he was anxious to tackle the task in his spare time. It was agreed that Sullivan should receive $5 an hour for the time spent upon the problem. He was offered the facilities of the Marcalus concern but felt that he could work more conveniently in his own laboratory. It was arranged that Sullivan should report upon his progress from time to time. And it was agreed that any formula or process which was discovered was to be the property of the complainant. And, further, should the resultant process be patentable, Sullivan was to apply for a patent and assign his rights in it to the complainant.
Sullivan started to work for Marcalus in May of 1946 and continued working upon the problem until April of 1947. He rendered reports of his progress from time to time and submitted samples of paper. Occasionally he would have other matters submitted to him but it is clear from the testimony that his main job and the one in which Marcalus was primarily interested was the perfection of a formula for the softening of paper.
Up to this point the testimony of the witnesses is in substantial agreement. It is true that Sullivan denied that he was employed to discover and develop a formula for the softening of paper, but his own reports contradict this testimony. He also denied that at any time he agreed to turn over any invention or discovery to the complainant. His testimony, however, weakened the force of the denial and the reason ultimately given for his refusal to surrender the formula was corroboration of the testimony of Marcalus that such an agreement existed. Sullivan testified that he refused to turn over the formula because it had not been discovered during the time he was engaged upon work for the complainant. Had he made no agreement there would have been no reason for his insistence that the discovery was made on his own time. It would have made no difference when it was made. His refusal would have been based upon the absence of an agreement. *Page 437 
About the end of March, 1947, according to Marcalus, he called Sullivan to inquire about the progress being made since he had not heard from Sullivan in some time. Sullivan informed Marcalus that he had perfected a formula which, he felt, accomplished the desired results and he arranged to go to the plant with a sample of the paper produced. Marcalus, upon being shown the sample, agreed with Sullivan that it met the specifications. When Marcalus asked for the formula, Sullivan said that it was so good he wished to take steps to protect it. He agreed that complainant was entitled to the process and to the assignment of any patent rights. But he was of the opinion that the process had uses other than those to which the complainant intended to put it and he felt that he should be given a license to use the process for purposes not in competition with the business of the complainant. To this request, Marcalus had no objection. He told Sullivan that a run of paper using the new formula would be made and if the result was successful, the company would give Sullivan a bonus of $5,000 and find a place for him in its organization.
The pilot run was delayed because of labor trouble but was eventually made in the latter part of April. Sullivan insisted on ordering the chemicals himself and they were sent to the plant in unmarked containers. The bill for the chemicals was paid by the complainant. Sullivan mixed the chemicals, made the run and the result was successful. Marcalus then asked for the formula. He told Sullivan that he would like to arrange for the preparation of a patent application. Sullivan objected. He stated that he wanted a written agreement executed before he turned over the formula. They arranged to meet in a few days.
By this time Marcalus had become suspicious of Sullivan's intentions and, at the meeting, he was attended by his patent attorneys. Sullivan had with him a lawyer and a patent expert. The meeting came to nothing. Marcalus refused to meet Sullivan's demands and Sullivan was not interested in the counter-proposals made by Marcalus. This litigation then ensued. *Page 438 
Sullivan attempted to justify his refusal to turn over the formula by stating that it was discovered when he was not working for Marcalus. He testified that in the middle of March, Marcalus told him to abandon work on the paper softening formula and to work on a commercial chemical, known as G 23-40, which the company had attempted to use but with which they had experienced trouble. Sullivan said he told Marcalus that he, Sullivan, was going to make a new approach to the problem and would do it on his own time. The formula was discovered during the week-end of March 29th. Sullivan saw his attorney on April 2d and went to the Marcalus plant on April 4th.
Sullivan gave two versions of the discovery of the formula. One was that it came to him after 18 hours continuous work in his own laboratory. When confronted with bills rendered by him to Marcalus in which he charged Marcalus for the time spent in the development of the formula, Sullivan then said that the formula came to him "like a flash" while he was resting in his living room. Sullivan also testified that the final formula was in no way related to the research he had been doing throughout the year. He insisted that his work for Marcalus had been of no value to him in reaching the ultimate result.
Sullivan's testimony is not convincing. He testified that in March Marcalus told him to abandon his search for a softening process and to work on G 23-40, which is a commercial softener, in an endeavor to improve it. Marcalus denied having made the statement attributed to him. But even had he suggested the possibilities of improving G 23-40, the work which Sullivan did would still be what he was originally hired to do, namely, to produce a satisfactory paper softener.
Sullivan also testified that he was not satisfied with the possibilities of G 23-40 and intended to make a new approach to the problem on his own time. Sullivan did not state what Marcalus replied. Quite obviously, had such a statement been made, Marcalus would have objected. Complainant was paying Sullivan to discover a satisfactory softener. Marcalus was anxious for results and any statement by Sullivan that *Page 439 
he was going to work on the problem outside of his employment by Marcalus would not have gone unchallenged. I do not believe that Marcalus made such a statement. And I am convinced that the discovery was made while Sullivan was engaged in making the experiments for which he was hired.
Sullivan's insistence that the successful process was the result of a new approach to the problem and that he was not benefited by his year's research is not borne out by the facts. Preeble, the chemist regularly employed by the complainant, testified that after the pilot run he analyzed the chemicals used and identified a sulfamic compound and an amine, both of which substances had been repeatedly used by Sullivan in his experiments and were discussed by him in his reports. And the reports, together with the final product, were submitted to an eminent chemist named Ellsworth. He testified that the series of reports submitted by Sullivan indicated a progressive approach to the ultimate result as shown by the finished product.
It is no longer open to question that where one is employed to devise or perfect an instrument or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers and that which they are able to accomplish he has sold in advance to his employer. The invention of a specific thing can be made the subject of a bargain and will pass in execution of that bargain. Solomons v. United States,137 U.S. 342; Connelly Manufacturing Co. v. Wattles, 49 N.J. Eq. 92; Houghton v. United States, 23 Fed. Rep. 2d 386;Standard Parts Co. v. Peck, 264 U.S. 52.
Such is the situation here. I am of the opinion that the evidence clearly establishes that Sullivan was employed by the complainant to invent or discover a process which, when applied to paper, would give it the qualities required by the complainant. For his services, Sullivan was paid the agreed sum of $5 an hour. I am satisfied that it was clearly understood *Page 440 
that the process, if and when perfected, was to become the property of the complainant. Sullivan discovered the desired formula. It was not an invention which he perfected while engaged in general duties for the complainant. He was specifically employed to conduct experiments for the purpose of making such an invention or discovery. Under those circumstances the complainant is entitled to the fruits of its bargain.
I shall advise a decree in conformity with the above.