18 N.J. 467 (1955)
114 A.2d 438
ADOLPH GOTTSCHO, INC., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
AMERICAN MARKING CORPORATION, A CORPORATION, AND JOHN K. JACKSON, DEFENDANTS-APPELLANTS, AND ALFRED REINKE, ET AL., DEFENDANTS.
The Supreme Court of New Jersey.
Argued April 24, 1955.
Decided May 23, 1955.
*468 Mr. Robert R. Daly and Mr. Ralph G. Mesce argued the cause for the appellants (Messrs. Daly, Hillis & McCormick, attorneys).
Mr. Jerome C. Eisenberg argued the cause for the respondent (Messrs. Eisenberg & Spicer, attorneys; Mr. Ralph Neibart, on the brief).
The opinion of the court was delivered by JACOBS, J.
The plaintiff Adolph Gottscho, Inc. duly instituted its action in the Chancery Division seeking injunctive and other relief against its former employee, Jackson, and the other named defendants; its complaint alleged that Jackson had in confidence learned the plaintiff's trade secrets while in its employ and that he and the other defendants were improperly using them. After a lengthy trial Judge Speakman made complete factual and legal findings in the plaintiff's favor; they are embodied in an opinion reported at 35 N.J. Super. 333 (Ch. Div. 1954). We are satisfied that his factual findings are supported by the evidence and that his legal findings conform with the principles recently expressed in Sun Dial Corp. v. Rideout, 29 N.J. Super. 361 (App. Div. 1954), affirmed 16 N.J. 252 (1954). Accordingly, *469 we affirm the judgment entered below without additional comment except on two legal issues which have been stressed here by the appellants but were not involved in the Sun Dial case.

I.
The defendant John K. Jackson and the defendant Alfred Reinke, president of the defendant Gus Reinke Machinery & Tool Company, controlled the defendant American Marking Corporation. The complaint charged that the Marking Corporation was formed by Jackson and Reinke for the purpose of making and selling machines similar to the plaintiff's machines and that the Tool Company was employed to perform the machinery and assembly operations; it sought injunctive and other relief, including damages, against all of the defendants. After the case had been partially tried, an agreement dated November 17, 1952 was signed by Jackson, Reinke, the Marking Corporation and the Tool Company; it provided for Reinke's withdrawal from the Marking Corporation and for the cessation of the Tool Company's operations for the Marking Corporation as soon as pending work was completed. Thereafter, under date of June 4, 1953, the plaintiff entered into an agreement with Reinke and the Tool Company which provided, in part, that Reinke and the Tool Company would not, for a period of eight years, manufacture any marking or imprinting machines similar to the plaintiff's and that the plaintiff would discontinue its pending action "only as against Reinke and the Tool Company, and shall not claim any relief against them by way of injunction or damages in said action." A stipulation dated June 4, 1953 between the attorneys for plaintiff and the attorneys for Reinke and the Tool Company set forth that the pending "action shall be dismissed only as to the defendants Alfred Reinke and Gus Reinke Machinery and Tool Co., with prejudice, and without costs to either party." The defendants contend that this stipulation constituted a release of two of the four defendant joint tort-feasors and legally operated as a release of all of them. See Vattani v. Damiano, 9 N.J. Misc. 290 (Sup. Ct. *470 1931). But cf. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 85 (1954).
The history, purpose and limits of the doctrine that the release of one joint tort-feasor releases his co-tort-feasors have been extensively dealt with elsewhere. See McKenna v. Austin, 77 U.S. App. D.C. 228, 134 F.2d 659, 148 A.L.R. 1253 (App. D.C. 1943); Prosser, Torts (1941), 1107; Salmond, Torts (11th ed. 1953), 90; Winfield, Torts (6th ed. 1954), 205; Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413, 422 (1937); 24 So. Cal. L. Rev. 466 (1951); 18 U. of Cin. L. Rev. 378 (1949); 11 Modern L. Rev. 230 (1948). Salmond, supra, expressed the common-law rule to be that the release applies to all even though this was not the intention of the parties "the reason being that the cause of action which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released." This rather metaphysical approach finds little acceptance in modern times and it is not at all surprising that recent decisions have sought to rest the doctrine on the equitable basis that there may be but a single satisfaction for a wrong and to confine it accordingly. Thus in Moss v. Cherdak, 114 N.J.L. 332, 334 (E. & A. 1935), Justice Perskie stated that the doctrine was founded on a sound principle of justice, namely, that "there can be but one satisfaction"; and in Judson v. Peoples Bank & Trust Co. of Westfield, supra, Justice Brennan similarly noted that it was rooted "in the sound and just principle that there may be but one satisfaction for a tortious wrong." In the latter case this court indicated approval of the view, which is being received throughout the states with increasing favor, that the issue of whether a separate settlement with one joint tort-feasor is made in full satisfaction or is made as a lesser compromise with the purpose of pursuing the other tort-feasors is a factual one which will properly turn on the intention of the parties. See McKenna v. Austin, supra; Bolton v. Ziegler, 111 F. Supp. 516, 523 (D.C.D. Iowa 1953); Gronquist v. Olson, 64 N.W.2d 159 (Minn. Sup. Ct. 1954). Dean Prosser, supra, at 1110, points out that in many jurisdictions *471 there has been a definite retreat from the rule of the common law that a release of one joint tort-feasor necessarily releases the others and forcefully suggests the desirable rule to be "that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." See Seavey, Cogitations on Torts, 53 (1954).
The plaintiff here sought to restrain each of the four defendants from appropriating its trade secrets and it likewise sought an accounting from each of the defendants. An injunction against and accounting by one defendant could not fully protect the plaintiff nor satisfy its claims as against the others and, under these circumstances, it may be doubted that the defendants may strictly be considered as joint tort-feasors within the common-law doctrine sought to be invoked by them. But even if they are so considered, we are satisfied that in the instant matter there never was any release within the proper application of that doctrine. See Judson v. Peoples Bank & Trust Co. of Westfield, supra; Gronquist v. Olson, supra. The stipulation dated June 4, 1953 contained no words whatever of release; it simply provided that the action shall be dismissed "only as to the defendants Alfred Reinke and Gus Reinke Marking and Tool Co." The intention of the parties seems wholly clear; the action was to be dismissed as against the two parties named but was to be continued in full force as against Jackson and the Marking Corporation. There was never satisfaction in any sense or degree of the claims for injunction and accounting which had been asserted against Jackson and the Marking Corporation. Under these circumstances Jackson and the Marking Corporation may not justly claim that they were released; on this issue the opinion in Judson v. Peoples Bank & Trust Co. of Westfield, supra, may be deemed controlling. Indeed, if it be still necessary to express the matter in traditionally artificial concepts, the stipulation may be viewed, both in terms and purpose, as a covenant not to sue rather than a general release. See Roseville Trust Co. v. Mott, 85 N.J. Eq. *472 297, 300 (Ch. 1915); Aljian v. Ben Schlossberg, Inc., 8 N.J. Super. 461, 466 (Law Div. 1950); Prosser, supra, at 1110.

II.
While its action was pending in the Chancery Division the United States Patent Office issued several patents to the plaintiff. These disclose some of the plaintiff's secrets though not all nor most of them. Jackson did not learn any of the secrets from the patents; he learned them in confidence while in the plaintiff's employ and improperly disclosed and used them long before the patents were issued. He contends, nevertheless, that the patents constituted public disclosures which automatically terminated the plaintiff's pre-existing cause of action against him and the Marking Corporation to the extent that it related to secrets disclosed by the patents. Although there are decisions which suggest support for his position, we believe that reason and the weight of authority are to the contrary. See Shellmar Products Co. v. Allen-Qualley Co., 87 F.2d 104, 109 (7 Cir., 1937), certiorari denied 301 U.S. 695, 57 S.Ct. 923, 81 L.Ed. 1350 (1937); A.O. Smith Corp. v. Petroleum Iron Works, 74 F.2d 934, 935 (6 Cir., 1935); Franke v. Wiltschek, 209 F.2d 493, 495 (2 Cir., 1953); Thiberg v. Bach, 107 F. Supp. 639, 642 (D.C.D.N.J. 1952), affirmed 203 F.2d 956 (3 Cir., 1953); International Industries v. Warren Petroleum Corp., 99 F. Supp. 907, 913 (D.C.D. Del. 1951); McKinzie v. Cline, 197 Or. 84, 252 P.2d 564, 569 (1953); Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977, 999 (1951), certiorari denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654 (1951). But cf. Conmar Products Corp. v. Universal Slide Fastener Co., 172 F.2d 150 (2 Cir., 1949); Picard v. United Aircraft Corp., 128 F.2d 632 (2 Cir., 1942), certiorari denied 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524 (1942); Darsyn Laboratories v. Lenox Laboratories, 120 F. Supp. 42 (D.C.D.N.J. 1954), affirmed 217 F.2d 648 (3 Cir., 1954).
*473 In the Franke case the plaintiff sought an injunction and accounting from the defendants who misappropriated trade secrets which they had learned in confidence; in response to the contention that the secrets had been revealed by an expired patent, the court said [209 F.2d 495]:
"Defendants argue that the heart of plaintiffs' process was revealed by an expired patent, and that the improvements thereon were unpatentable applications of mechanical skill. This totally misconceives the nature of plaintiffs' right. Plaintiffs do not assert, indeed cannot assert, a property right in their development such as would entitle them to exclusive enjoyment against the world. Theirs is not a patent, but a trade secret. The essence of their action is not infringement, but breach of faith. It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. This duty they have breached. Junker v. Plummer, 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1449, citing 4 Restatement, Torts § 757 and comment a (1939); Peabody v. Norfolk, 98 Mass. 452; Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387, 67 A. 339, 12 L.R.A., N.S. 102; Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12, 16 Am. St. Rep. 740; Spiselman v. Rabinowitz, 270 App. Div. 548, 61 N.Y.S.2d 138, appeal denied 270 App. Div. 921, 62 N.Y.S.2d 608; Extrin Foods, Inc., v. Leighton, 202 Misc. 592, 115 N.Y.S.2d 429. See also Smith v. Dravo Corp., supra, 7 Cir., 203 F.2d 369; Schreyer v. Casco Products Corp., 2 Cir., 190 F.2d 921, certiorari denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683; 4 Restatement, Torts § 757 and comment a (1939); Nims, The Law of Unfair Competition and Trade-Marks §§ 141, 143a, 148 (4th ed. 1947); Note, Protection and Use of Trade Secrets, 64 Harv. L. Rev. 976, 979, 982; cases collected in annotated note 170 A.L.R. 449, 488-490."
In the Hyman case the court held that disclosures in patent applications did not bar the plaintiff's action to restrain the defendants from appropriating its trade secrets; in the course of its opinion it said [123 Colo. 563, 233 P.2d 999]:
"It is our conclusion that the composition of matter embraced in applications for United States Letters Patent Serial Nos. 581172 and 639416, 607078 and 643759 were plaintiff's trade secrets, and defendants' betrayal of these trade secrets may not be countenanced by a court of equity. Assuming that the applications for patents in Great Britain and other foreign countries amounted to a disclosure of plaintiff's trade secrets, neverthless it did not relieve the individual *474 defendants here from their contractual and fiduciary obligation. The determination of what, if any, rights the public may have respecting the use of plaintiff's trade secrets by reason of the application for letters patent in Great Britain or elsewhere, we will leave for decision when that question is presented.
The knowledge of chlordane and the construction and equipment of the plant in which the same was manufactured  for which it had expended several hundred thousands of dollars  were, as we have said, plaintiff's trade secrets. Any knowledge which defendants acquired respecting those secrets was obtained while they were plaintiff's employees, and under a contractual obligation, as evidenced by their employment agreements, and in addition thereto this knowledge of plaintiff's trade secrets was acquired by them in confidence and while they were occupying a fiduciary relationship. They now seek to appropriate these trade secrets to their own use and profit by a violation of their contractual agreements and a betrayal of the confidence reposed in them by plaintiff. This they may not do; such conduct is abhorrent to our conception of ordinary honesty. Shellmar Products Co. v. Allen-Qualley Co., supra; E.I. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; Marcalus Mfg. Co. v. Sullivan, 142 N.J. Eq. 434, 60 A.2d 330; Bohlman v. American Paper Goods Co., D.C., 53 F. Supp. 794; A.O. Smith Corporation v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531; Conmar Products Corp. v. Universal Slide Fastener Co., Inc., 2 Cir., 172 F.2d 150; Consolidated Boiler Corp. v. Bogue Electric Co., 141 N.J. Eq. 550, 58 A.2d 759; Junker v. Plummer, 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1449; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, certiorari denied 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524; Hoeltke v. C.M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912; Sandlin v. Johnson, 8 Cir., 141 F.2d 660; Stone v. Goss, 65 N.J. Eq. 756, 55 A. 736, 63 L.R.A. 344; Heyden Chemical Corp. v. Burrell & Neidig, Inc., 2 N.J. Super. 467, 64 A.2d 465; Larx Co. v. Nicol, 224 Minn. 1, 28 N.W.2d 705; Jones v. Ulrich, 342 Ill. App. 16, 95 N.E.2d 113; Paley v. Du Pont Rayon Co., 7 Cir., 71 F.2d 856; 170 A.L.R. 471 et seq.; 28 Am. Jur. p. 303, § 110 et seq.; 35 Am. Jur. p. 525, § 97; 56 C.J.S., Master and Servant, § 72, p. 483; 43 C.J.S., Injunctions, § 148 et seq., p. 750; Hopkins on Trademarks, Tradenames and Unfair Competition (4th ed.), p. 255 et seq., § 109; 1 Nims, Unfair Competition and Trademarks (4th ed.), p. 419 et seq., § 149; 5 Williston on Contracts (Rev. ed.), p. 4623, § 1646."
We are not here concerned with any claim of patent infringement nor are we concerned with the rights of the public generally. Jackson learned the plaintiff's trade secrets in confidence and, in violation of his fiduciary obligations, he disclosed and used them for purposes other than his employer's benefit. See Sun Dial Corp. v. Rideout, supra, *475 16 N.J., at page 259; Vulcan Detinning Co. v. American Can Co., 72 N.J. Eq. 387, 395 (E. & A. 1907). His conduct was grossly improper and gave rise to the plaintiff's cause of action, based on long-settled equitable principles and supported by the marked changes in the attitude of the law towards the need for commercial morality. Sun Dial Corp. v. Rideout, supra, 16 N.J., at page 261; Franke v. Wiltschek, supra, 209 F.2d, at page 499. Cf. 3 Restatement, Torts, 540 (1938): "the tendency of the law, both legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade." We know of no persuasive reason for depriving the plaintiff of the benefits of its accrued cause of action because some of its secrets were later disclosed by the issuance of protective patents during the pendency of its action. Surely the defendants are in no just position to seek this result and the plaintiff should not be subjected to the burden and jeopardy of additional or divided proceedings to obtain the complete relief to which it is here fairly entitled as against the defaultant fiduciary Jackson and his company the American Marking Corporation.
Affirmed.
For affirmance  Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN  6.
For reversal  Justice HEHER  1.