**MIDLAND–ROSS CORPORATION,**
Appellant,

v.

**Lucian D. YOKANA and Sterling
Extruder Corporation.**

No. 13418.

United States Court of Appeals
Third Circuit.

Argued June 20, 1961.

Decided July 31, 1961.

Robert W. Poore, Cleveland, Ohio, Francis E. P. McCarter, Newark, N. J. (McCarter & English, Newark, N. J., Robert J. Hoerner, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on the brief), for appellant.

Stanton T. Lawrence, Jr., Oceanport, N. J. (Charles E. McKenney, Pennie, Edmonds, Morton, Barrows & Taylor, New York City, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of New Jersey denying the plaintiff an injunction but retaining jurisdiction for such further proceedings as are neces-

sary. The interlocutory appeal is timely and allowable.[1] Federal jurisdiction is based on diversity. The plaintiff is an Ohio corporation. The defendants are an individual citizen of New Jersey and a New Jersey corporation. All the operative facts occurred in New Jersey. New Jersey law governs the substantive rights of the parties.

The plaintiff is a successor to a corporation called Hartig Engine & Machine Co. The defendant was employed by Hartig and upon its acquisition by Midland-Ross Corporation remained in the employ of that corporation for a time and then set out on business of his own through the codefendant, Sterling Extruder Corporation, a corporation which he caused to be formed. This new corporation is in competition with the plaintiff company and the latter seeks an injunction based upon an alleged breach of confidential relationship which it is claimed existed between the plaintiff corporation and its predecessor and the defendant Yokana. Yokana was, in the words of the trial judge, "a trusted employee of the plaintiff." At the termination of his employment he had in his possession a good many documents such as customer lists, lists of suppliers and pricing data. He also had drawings of various parts of the extruding machines manufactured by the plaintiff and which are now also being manufactured by the defendant. The plaintiff claims a violation of confidential relationship involved in Yokana's employment by it and demands an injunction against defendants, restraining them from manufacturing plastic extruding machines embodying designs or dimensions derived by defendants from drawings now belonging to the plaintiff and from disclosure of any of plaintiff's trade secrets. It also asks for an accounting, punitive damages and so on. The trial judge directed the return of documents held by Yokana at the termination of his employment by the plaintiff.

The parties do not dispute the propriety of this part of the district court's order and the question now presented is whether further injunctive relief should be given against Yokana and the corporation he formed upon leaving the plaintiff's employ. This problem was fully discussed by the trial judge who concluded that except for the return of documents belonging to the plaintiff in the defendants' possession further injunctive relief was inappropriate. He reserved jurisdiction for the other phases of the case involving among other things a claim for damages. D.C.N.J.1960, 185 F. Supp. 594.

■ We have before us in this case two perfectly well established principles. One is that an employee after leaving the service of an employer may carry on the same business on his own and use for his own benefits the things he has learned while in the earlier employment. If this were not so an apprentice who has worked up through the stages of journeyman and master workman could never become an entrepreneur on his own behalf. Any such system of quasi-serfdom has long since passed away. Necessarily the former employee may use what he learned in the former employer's business while engaged in business for himself or some business competing with the former employer. All this is set out in the Restatement of Agency, Second, §§ 396 and 393, especially in comment e (1958).

Equally clear is the proposition that the employee owes a duty of loyalty to the employer. He must not, while employed, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the employer-employee relationship. Restatement of Agency, Second, § 387. These two general propositions are well settled and, in the broad terms just stated, could not be successfully disputed by anyone. The question is on which side of the line the present case falls.

1. "(a) The courts of appeals shall have jurisdiction of appeals from:
    "(1) Interlocutory orders of the district courts of the United States, * * *

granting, continuing, modifying, refusing or dissolving injunctions * * *" 28 U.S.C. § 1292.

■ The appellant makes much of a series of things which Yokana was said to have done while he was still in the employ of Midland-Ross. They may be summarized as follows:

A. A proposal to customers named Moss which eventually resulted in the Mosses joining up with Yokana in his new enterprise;

B. Yokana's attorney submitted a proposed agreement for the formation of the competing organization;

C. Yokana accepted orders to be filled by his new corporation for business;[2]

D. He copied drawings of the employer in his possession;

E. The defendant ordered some castings for his new enterprise;

F. He ordered some machinery for it;

G. He asked delivery specifying a date; and

H. He went to a sales meeting of the plaintiff corporation just before he turned in his resignation.

■ None of this excites us very much because before leaving employment a man may make plans for his new enterprise so long as he does not use his employer's time or any trade secrets in so doing. Restatement of Agency, Second, § 393, comment *e* (1958); Restatement of Torts, § 757 (1939).

■ Just what is it then which makes a basis for a charge that this defendant violated his duty of loyalty to his employer? We do not see that there was any error on the part of the trial judge in not finding trade secrets involved in the manufacture of these extrusion machines by the defendant's former employer. The machines were exhibited along with a catalogue at trade shows. Anybody could see what they were. The

drawings showing the various parts of the machine were sent to the manufacturers who made the parts without any agreement as to nondisclosure on the part of these manufacturers. The same is true of the purchasers of the machines. They got whatever blueprints or drawings were necessary in order for these purchasers to order parts from the plaintiff manufacturers or others in case they needed replacement parts. After the present plaintiff took over from its predecessor, Hartig, the evidence shows some attempt at secrecy within the plant. But the events just related took place before that.

■ An inspection of the machines manufactured by the plaintiff and its predecessor would disclose everything which the drawings of those machines set out. It is true one would have to have a machine and have it cleaned and not in operation in order to take the measurements. But we think it is indicated that any skilled engineer could form a set of drawings or blueprints for himself if he had opportunity with the parts of the machine before him. The court was correct in saying that there was no basis for injunctive relief against Yokana. If the plaintiff is entitled to damages for the acceleration of Yokana's plans due to the fact that he had the drawings and did not have to measure the completed machine, it is to be remembered that the court retained jurisdiction for the award of any damages to which the plaintiff is found to be entitled.

What we have said we find not only in accord with but supported by the principal New Jersey cases cited to us and discussed by each side. The leading case is Sun Dial Corp. v. Rideout, 1954, 16 N.J. 252, 108 A.2d 442. In that case the element of secrecy was considered essential by the court and the evidence of secrecy was discussed in some detail.

2. These orders were submitted by customers of the plaintiff but were in the nature of favors to an individual who was well liked by the customers. The orders were given in terms of being Yokana's first customer and were not of the type indicated in the Restatement of Agency, Second, § 393, comment *e* (1958). Yokana did not go about soliciting orders in competition with Midland-Ross while still in its employ.

Among the features of that case, which are quite distinct from the facts of this one, are statements by a competitor that attempts to duplicate the process (used in making special dials and panels) had been unsuccessful, the fact that another competitor felt compelled to obtain a license to gain the details of the process, the fact that an article describing the process had contained deliberate ambiguity and the fact that visitors to the plant were required to sign a pledge not to disclose anything they saw. There is some language in a subsequent case, Adolph Gottscho, Inc. v. American Marking Corp., 18 N.J. 467, 114 A.2d 438, certiorari denied, 1955, 350 U.S. 834, 76 S.Ct. 69, 100 L.Ed. 744, which appellant has relied upon to indicate that disclosure does not destroy the right to injunctive relief. However, the court makes it plain that the basis of the action must be trade secrets. We think the following language destroys appellant's reading of the case:

"We know of no persuasive reason for depriving the plaintiff of the benefits of its accrued cause of action because some of its secrets were *later* disclosed by the issuance of protective patents during the pendency of its action." 18 N.J. at page 475, 114 A.2d at page 442. (Emphasis added.)

There is one matter, however, that we are not sure the learned judge of the district court had in mind. At the end of his able opinion he talks about requiring the return of drawings, blueprints and other documents and then he says he is "not precluding the presentation of evidence, if available, upon the issue of damages, if any, suffered by plaintiff in consequence of defendant's use of plaintiff's customer lists, cost calculations, and pricing data." We think there is also an item to be considered which is whether by using the plaintiff's drawings and the like instead of making measurements themselves, defendants did not short-cut by improper use of plaintiff's material what they otherwise could have dug out through a more expensive, painful process. If all plaintiff's evidence in that respect should be true, we think that is an element also to be considered in determining what the defendant should be required to pay to the plaintiff. We do not find in the words of the trial judge any reference to this point.

The judgment will be affirmed.