504 P.2d 1292

**Cheryl ADAMS, by and through her Guardian ad Litem, Norman Adams, Appellant,**

v.

**Matt DION, by and through his Guardian ad Litem, and William Dion, Appellees.**

**No. 2 CA–CIV 1244.**

Court of Appeals of Arizona,
Division 2.

Jan. 16, 1973.
Rehearing Denied Feb. 28, 1973.
Review Granted March 27, 1973.

O'Dowd, Fahringer & Diamos by Erik M. O'Dowd, Tucson, for appellant.

Estes & Zlaket by Thomas A. Zlaket, Tucson, for appellees.

HOWARD, Judge.

Does the release of one joint tort-feasor release all other joint tort-feasors? That is the issue to be resolved in this case. The trial court held in the affirmative, granting appellees' motion for summary judgment. The record construed in the light most favorable to the party resisting summary judgment, the appellant, discloses that on July 27, 1966, 13 year-old Cheryl Adams was a passenger in an automobile which collided with another automobile driven by Kris Burwell. At the time of the accident the Burwell vehicle was racing on East 5th Street in Tucson, Arizona, with the automobile operated by appellee Matt Dion.

As a result of the accident Cheryl Adams suffered a severe head injury, permament brain damage, and is now a helpless invalid requiring constant attention by her parents. As of January 12, 1972, her medical expenses have been in the sum of $11,016.10 and it may be necessary for her to be hospitalized in the future.

Cheryl's father was appointed guardian of her person and estate. On February 17, 1967, her guardian was authorized by the court to compromise her claim against Kris Burwell and his parents for the sum of $50,000 and upon receipt of the sum to execute a release releasing the Burwells for any and all liability arising out of the accident. The $50,000 was paid to the guardian and a general release was executed without expressly reserving any rights against the appellees Dion.

On July 20, 1971, this action was filed by appellant against appellees alleging negligence on the part of Matt Dion in the operation of the vehicle he was driving and further alleging liability on the part of his father, William Dion, under the family car doctrine.

Appellees answered the complaint alleging, *inter alia*, the affirmative defense of release. Appellees moved for summary

judgment contending that the release of the Burwells also released them by virtue of the doctrine that the release of one joint tort-feasor releases all joint-feasors. Appellant opposed the motion on the ground that a release of one joint tort-feasor does not release all of them unless the person executing the release so intends. Attached to appellant's opposition to the motion for summary judgment was the affidavit of Cheryl's guardian stating, in part, that when he executed the release he never intended to release anyone other than the Burwells; that he was never told that if he signed the release he would be releasing any other persons; and that his understanding of the document was that it released only the Burwells and their insurers.

Appellant further resisted the motion for summary judgment on the ground that the court order authorizing the compromise only gave him the authority to compromise with and release the Burwells and no other persons.

The trial court ruled that as a matter of law the release acted as a release as to the appellees since they were joint tort-feasors and granted summary judgment in favor of the appellees and against appellant.

Appellant presents two questions for review to this court which are in essence: (1) Does the release of one joint tort-feasor release all other joint tort-feasors regardless of the intent of the parties, and (2) if so, could the release in this case operate to release appellees when the court only authorized the execution of a release in favor of the Burwells?

There are few common law rules as anachronistic and senseless as the rule that the release of one joint tort-feasor releases all joint tort-feasors. The rule has been justly condemned by legal commentators. *See*, W. Prosser, The Law of Torts § 49 (4th ed. 1971); 1 F. Harper & F. James, The Law of Torts § 10.1 (1956), pp. 709–714, and was soundly thrashed by Justice Rutledge in McKenna v. Austin, 77 U.S.

App.D.C. 228, 134 F.2d 659 (1943). In 1923, Dean Wigmore referred to the release rule as a surviving relic which was based on false logic and although accepted by many courts, was fortunately being repudiated in some states by judicial decision and in others by legislative action. *See*, Wigmore, "Release of One Joint Tort-Feasor", 17 Ill.L.Rev. 563 (1923).

Under the common law rule the release applies to all joint tort-feasors, even though it was not the intention of the parties, the reason being that the cause of action which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released. This rule is described in Adolph Gottscho, Inc. v. American Marking Corp., 18 N.J. 467, 114 A.2d 438 (1955) as being a rather metaphysical approach which finds little acceptance in modern times. It was further noted that recent decisions have sought to rest the doctrine on the equitable basis that there may be but a single satisfaction for a wrong and to confine it accordingly.

In McKenna v. Austin, supra, 134 F.2d at p. 662, Justice Rutledge comments:

"The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. [footnote omitted] Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tort-feasors an advantage wholly inconsistent with the nature of their liability."

The rationale for rejecting the common law rule is forthrightly stated in Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958):

"When A has a tort claim against both B and C, there is nothing which forbids him from dealing individually with B or C. If B or C pays A's claim in full, then A clearly has no further recourse against B or C for he has received full satisfaction and may not justly claim any more. But if B or C wants to compromise with A by giving only partial compensation, there is no reason why A should not be permitted to accept it and legally discharge his claim against the partial payor while proceeding with his claim for the balance against the other tortfeasor; indeed the law affirmatively favors such compromises. See Judson v. Peoples Bank & Trust Co., supra, 25 N. J. [17] at page 35, 134 A.2d [761] at page 770. And if A executes a release running in favor of the partial payor alone, there is no basis, in policy or justice, for giving the release the legal effect of discharging the other wrongdoer, who paid nothing and was a total stranger to the release, unless that was the intention of the parties to the release."

In rejecting the application of the common law rule in modern times Prosser notes that the fear of double recovery is meaningless since the amount paid under the release itself must in any event be credited to the joint tort-feasor. *See,* W. Prosser, The Law of Torts, supra, p. 302. *See also,* Riexinger v. Ashton Company, 9 Ariz.App. 406, 453 P.2d 235 (1969). Although Prosser's treatise cited above lists two jurisdictions in the United States which still cling steadfastly to the rule that it is impossible to settle with one joint tort-feasor without releasing another, to wit, Washington and Virginia, our research has revealed that these two states have retreated from this position. In the case of Christianson v. Fayette R. Plumb, Inc., 7 Wash.App. 309, 499 P.2d 72 (1972), Division 1, Panel One, in a welcome step forward modified the joint tort-feasor rule to conform to the Restatement of Torts § 885 (1939).[1]

Virginia has retreated from the common law rule, as have many other jurisdictions, by use of the covenant not to sue, holding that the plaintiff using such a covenant does not release other tort-feasors. Lackey v. Brooks, 204 Va. 428, 132 S.E.2d 461 (1963). Our own Supreme Court in Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937), described the covenant not to sue as an "ingenious method of 'whipping the devil around a stump'" and recognized that it would not act to release joint tort-feasors. Prosser calls the use of the covenant not to sue a "technical evasion, which is the most obvious of subterfuges for circumventing an inconvenient common law rule". Prosser, The Law of Torts, supra, p. 303. It is worse than that; it is nothing short of legalistic "black magic". With a few ritualistic incantations and symbols inscribed on paper one leaves the witch doctor's hut' with the healthy ability to pursue the remaining wrongdoers.

At present, thirty-seven jurisdictions hold by case law or by statute that a release of one joint tort-feasor releases other joint tort-feasors only if (1) it is so intended; or (2) full satisfaction is in fact given; or (3) the release expressly so provides.[2]

---

1. Restatement of Torts § 885 (1939) paragraph (1) provides:
   "(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document."

2. Those deciding by case law are: District of Columbia, United States Supreme Court (Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); Alabama, Alaska, Idaho, Indiana, Iowa, Kansas,

Six states follow the Restatement of Torts § 885 (1939), supra. They are Colorado, Louisiana, Nevada, New York, Utah, Wisconsin and Washington.

Five states retain the old common law rule but recognize covenants not to sue: Georgia, Illinois, Maine, Ohio and Virginia.

Three cases in Arizona have touched on this problem: Fagerberg v. Phoenix Flour Mills Co., supra; Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741 (1948), and Reese v. Cradit, 12 Ariz.App. 233, 469 P.2d 467 (1970). In the foregoing Arizona cases, although the court recites the common law rule, its holding in each case is based on other factors. For example, in *Fagerberg,* supra, the court states that a covenant not to sue does not release a joint tort-feasor; in Smith v. Pinner, supra, the court held that dismissal during trial of one tort-feasor does not release the other; and in Reese v. Cradit, supra, this court dealt with a covenant not to sue and remarked on the reason for its use. In none of the foregoing cases has the court held as a necessary part of its decision that the law in Arizona is that the release of one joint tort-feasor releases all tort-feasors.

Arizona courts will generally follow the Restatement of Law unless a different rule has been pronounced by judicial fiat or by legislative enactment. Rodriguez v. Terry, 79 Ariz. 348, 290 P.2d 248 (1955); Burrell v. Southern Pacific Company, 13 Ariz.App. 107, 474 P.2d 466 (1970). Thus our normal reaction would be to follow Restatement of Torts § 885 (1939), paragraph 1, supra. This section of the Restatement, however, requires the parties to the release to set forth therein that the release *does not* release the other tort-feasors. We would be inclined to follow the First Restatement rule were it not for the fact that § 885 is in the process of being substantially changed. This was noted by the United States Supreme Court in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), wherein Justice White, writing for the majority stated:

". . . To adopt the ancient common-law rule would frustrate such partial settlements, and thereby promote litigation, while adoption of the First Restatement rule would create a trap for unwary plaintiffs' attorneys. The straightforward rule is that a party releases only those other parties whom he intends to release. Our conclusion that this is the appropriate rule for giving effect to releases under the anti-trust laws is further buttressed by the Restatement's abandonment in a tentative draft of the rule requiring express reservation of rights in order to save them, and its adoption of the rule to which we adhere. See Restatement (Second), Torts § 885, Comments a–d (Tent. Draft No. 16, 1970)."

Thus Restatement (Second) Torts § 885, (Tentative Draft No. 16, 1970) has been changed to read as follows:

"A valid release of one tortfeasor from liability for a harm given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it shall do so."

The commentators point out that the requirement of a reservation of rights *in* the release has proved to be somewhat of a booby trap for the unwary, since many releases are signed or even drawn without legal advice. Restatement (Second) Torts (Tentative Draft No. 16, supra.). And, in the revised comment d, id., it is pointed out that:

"The agreement as to the effect of the release may be proved by external evidence, and the objection of the parol evi-

Kentucky, Minnesota, Mississippi, Montana, Nebraska, New Hampshire, New Jersey, Oklahoma, Oregon, South Carolina, Tennessee, Texas, Wyoming.

Those so holding by statute are: Arkansas, California, Delaware, Florida, Hawaii, Maryland, Massachusetts, Michigan, Missouri, New Mexico, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Dakota, and West Virginia.

dence rule is met by the fact that the second tortfeasor who raises the question is not a party to the instrument." [3]

We therefore hold that the issue of whether the release bars this action against appellees rests on factual questions of intent and full compensation. The burden of establishing these factual defenses rests upon appellees. Rule 8(d), Ariz.R.Civ.P., ·16 A.R.S.

In view of our disposition of this case we need not decide appellant's second question for review. The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

HATHAWAY, C. J., and T. J. MAHO-NEY, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge T. J. MAHONEY was called to sit in his stead and participate in the determination of this decision.

3. *Cf.*, Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935). *See also*, Annot., 13 A.L.R.3d 313 et seq., (1967).